V. Otis Robinson v. Robert Sullivan et al.

[59 South. 846.]

1. Subrogation. *Rights of purchasers of incumbered property.* *Vendor's lien.*

Whenever a party has such an interest in property as makes it incumbent on him to get in an outstanding claim or equity for its protection, good conscience dictates that he shall have all the rights which the holder of the equity had.

2. Subrogation. *Rights of purchaser of incumbered property.* *Mortgagee.* *Sales.* *Rights of purchaser.*

Where a party purchases land on a credit and executes his notes for the purchase money and dies without paying the notes, leaving as his heirs a widow and two minor children, and the widow pays the purchase notes and has a deed made to herself from the vendor and thereafter gives a trust deed upon the land and on her failure to pay the same the land is sold under the trust deed and bought in by a third party; in such case, the widow in paying the notes executed by her husband, covering the purchase money for the land, and obtaining a discharge of the vendor's lien securing them, was not a mere volunteer; she had the right to do this in order to protect her interest in the land and to look to her cotenants for reimbursement to the extent of their proportionate interest therein and if necessary for complete justice to be done her, equity will treat this vendor's lien as still existing and enforce it for her benefit, and to this right of the widow the purchaser at the sale under the trust deed given by her will be subrogated.

Appeal from the chancery court of Hinds county.

Hon. G. G. Lyell, Chancellor.

Suit by Robert Sullivan and another agaisnt V. Otis Robinson. From a decree for plaintiff defendant appeals.

The facts are fully stated in the opinion of the court.

*V. Otis Robertson,* for appellant.

24 Am. & Eng. Ency. Law, 248: "The general rule is that any person having an interest in property upon

which there is a lien or incumbrance may, if necessary for his own protection, pay off the same and be substitued to the rights and remedies of the holder thereof.''

Mrs. Brown had one third interest in the property at the time of the death of her husband.

*Stinson* v. *Anderson,* 96 Ill. 373: Where a widow after the death of her husband pays off a debt secured by ;a trust deed given by the husband and takes a release -thereof the deed being a valid lien and thereby preserves :the property, she will be entitled to foreclose the same for her own benefit.

In *Simmons* v. *Lyle,* 32 Gratt. (Va.) 752, the widow remained in the mansion house having with her two infant children whom she supported. No assignment of dower was made to her; she paid the balance of purchase price due for the property which was secured by a vendor's lien; she also paid taxes due upon the property. It was held that she was entitled to be reimbursed, the amount of the taxes and purchase money paid by her, and that the claims so paid off constituted prior liens on the property.

*Robinson* v. *Leavitt,* 7 N. H. 73.

Counsel for appellee rely on *Howell* v. *Bush,* 54 Miss. p. 437, as the leading case in Mississippi on the subject of subrogation in this case, the facts of which are stated in the brief of the appellee it is held, ''A mere change in the form of indebtedness will not discharge the lien unless the parties clearly intended to extinguish it; but equity will consider it alive or not as accords best with justice and the parties' actual intention.'' It is to' be noted in this case (a) that there was no intention at all on the part of Howell or any of the parties to consider the vendor's lien alive; (b) there was no accident or failure of minds to meet; (c) a large amount of the consideration had been paid, to wit, five thousand dollars, :sufficient to create more than a homestead exemption for Mrs. Howell, in other words, she had an actual *bona fide* interest in the property.

*Howell* v. *Bush* is an entirely different case from the one before the court. In the case at bar the following points are to be noted: (a) the father of the children had paid nothing on the property and the children paid nothing; (b) the mother paid the purchase price with her own funds, with no intention whatsoever to have the children, share in it—in fact, she went deliberately to work to have the title in her own name, and thought that she had succeeded in securing the title in her own name until advised to the contrary by an attorney after she had sold same; (c) under the circumstances it most assuredly would be equitable to consider her claim on the property alive under the lien which she had mistakenly and without intent discharged.

It accords best with justice and the parties' actual intention to keep the lien alive.

But we contend that Howell against Bush, above referred to, is not the leading case and that it has been in effect overruled.

The leaning of the court against the apparently strict holding in *Howell* v. *Bush,* is clearly shown in the decision made a few months later in the case of *Cansler* v. *Sallis,* 54 Miss. 446.

By the terms of the will of Wallace, all of his debts as guardian were made a charge against his estate, and the money derived from McGee, as purchaser of the land, went to pay off these debts. McGee's money exonerated the property of the estate from a legal charge, and he was disappointed in his belief that he had acquired a valid title to the property which he bought. The heirs of Wallace sought to recover the land and at the same time claimed to retain the benefit which accrued to them by the satisfaction of the debt. Chief Justice GEORGE quotes the following from Judge STORY:

"That where a *bona fide* possessor or purchaser of real estate pays money to discharge any existing encumbrance or charge upon the estate, having no notice of

any infirmity in his title, he is entitled to be repaid the amount of such payment by the true owner seeking to recover the estate from him."

This principle seems now to be fully established. It has been recognized in the following cases in this court: *Jayne* v. *Boisgerard,* 39 Miss. 796; *Short* v. *Porter,* 44 Miss. 533; *Cole* v. *Johnston,* 53 Miss. 94; *Gaines* v. *Kennedy,* 53 Miss. 103.

In *Weaver* v. *Norwood,* 59 Miss. 678, we find:

"It is well settled in this state, aside from the provisions of the statute, that a court of equity will, in favor of a *bona fide* purchaser, who failed to acquire the title which he believed he was getting, charge the land in the hands of the owner with the amount of the purchase money appropriated to the discharge of an incumbrance on it. This has been adjudicated in an unbroken line of cases."

Special attention is called to the case of *Bonner* v. *Lessley,* 61 Miss. 392.

The facts in that case are: William L. Frazier gave a deed of trust on a piece of property; later he died and the deed of trust was foreclosed by a substituted trustee, whose appointment was void, therefore making the sale void; at the trustee's sale the property was bought by Caroline A. Frazier and the money she paid at the sale used in paying off the debt. Caroline A. Frazier then sold the property by giving a deed of trust to H. S. Van Eaton; subsequently the property was sold to a man named Lessley; William L. Frazier had three children at the time of his death, and these children set up a claim to the property because of the void sale. It will be noted that the facts are strikingly similar to those ¹n the case at bar. The court held that the sale was void' but that the property should be charged with the debt existing on it at the time they inherited it, and Judge COOPER, delivering the opinion of the court said:

"Mrs. Frazier, however, by her purchase under the void sale if the money paid by her was applied to the

extinguishment of the trust debt became the equitable assignee of the debt and subrogated to the right of the original *cesuti que trust,* and as such, entitled to charge the land in equity with the debt paid, *Clarke* v. *Wilson,* 56 Miss. 753, and this right passed to those claiming the estate under her.''

The important point in the above case is the definite and distinct ruling that the right to subrogate passes to those grantees whose immediate or remote grantors have paid off a valid debt existing on an estate, when the heirs become entitled to the possession.

In *Trust Co.* v. *Peters,* 72 Miss. 1058, we have an elaborate case wherein *Howell* v. *Bush, supra,* is overruled. The facts stated by Justice WHITFIELD are as follows: Peace, the common debtor of the Freehold Co. and Allen & Co. owed the former, say, $26,000 and the latter twenty-five thousand dollars; the Freehold Co. having the senior, and Allen & Co. the junior, mortgage; Peace wanted more money to pay off the Freehold Co. and to farm on; he applied to the Union Company through its agents, the Corbin Banking Company for a loan of thirty-eight thousand dollars; the Corbin Banking Company, intentionally and fraudulently keeping off the application the freehold mortgage and all the Allen & Co. mortgages, the Corbin Banking Co. being the agent of the Union Co. The Union Co. through its agent and Dr. Peace agree expressly that the Freehold Company's mortgage should be paid off, satisfied and forever extinguished—not kept alive. It was so paid off; the said mortgage was actually sent by the Corbin Banking Co. from New York to Martin at Memphis to be delivered to Peace, and in the eye of the law, was as effectually in his hands as if actually delivered. Allen and Co. were entirely ignorant of all this—never knew or supposed there was any new creditor, but understood that the Freehold Company's debt was being renewed and continued. The Freehold Company's debt being thus paid off and sat-

isfied by express agreement of the Union Company through its agent, the Corbin Banking Co., and Peace, and in exact accordance with their actual intention, the Allen & Co. trust deed stood first in legal priority, Allen & Co. having had nothing whatever to do with the dealings between Peace and the Union Co.

The court applied the doctrine of subrogation, and said:

"Cases may undoubtedly be found which would deny subrogation under the circumstances, even as between the appellant and Peace . . . but there are other cases holding a different view, and we think with better reason. The principle of equitable subrogation does not arise from contract (for that is conventional subrogation) but it is a creation of the court of equity, and is applied in the absence of an agreement between the parties where otherwise there would be a manifest failure of justice. . . . The present case is as to matters hereinbefore referred to fully covered by the decision of this court at the April term, 1894, in the case of *McMullen* v. *Home Investment Co.,* in which no opinion was written. That case and *Cansler* v. *Sallis,* 54 Miss. 446, are decisive also, that since Allen & Co. are by applying the rinciples of subrogation placed in no worse attitude than they originally were, the fact that they have a mortgage on the same property cannot defeat the right of subrogation invoked by appellant here."

Justice WHITFIELD, in a dissenting opinion says:

"I refer especially also to *Howell* v. *Bush,* 54 Miss. 437, within the principle of which case this case in my judgment falls precisely. With all deference, I think the opinion of the court overrules that case."

In *Dorrah* v. *Hill,* 73 Miss. 792, the real meaning of *Howell* v. *Bush, supra,* is explained. The court says:

"It is said by counsel that the chancellor was controlled in his decision by the case of *Howell* v. *Bush,* 54 Miss. 437. In that case Howell owned an incumbered

homestead, borrowed the money from Bush to pay off
the debt, agreeing to give as security a deed of trust on
the property. This deed he executed but there as here
the wife did not join in the deed, and Bush sought sub-
rogation to the rights of the incumbrancer whose debt
the money had paid. The court held that since Bush had
carved out and selected his own security and had can-
celled and intended to cancel the original incumbrance,
and since neither fraud nor mistake of fact was alleged
or proved the original incumbrance could not be revived
for his protection. . . . The reason of that case,
however, was that the vendor had carved out his own
security which failed of effect because of a mistake of
law. It does not decide that there can be no subrogation
in any event to a security which is discharged and in-
tended to be discharged by the parties. . . . In the
administration of relief by subrogation it will be found
that the jurisdiction of equity rests largely upon pre-
vention of fraud, and relief against mistakes, and the
expansion of the rule has so nearly covered the field that
it may now be said that whereever a court of equity will
relieve against a transaction it will do so by the remedy
of subrogation if that be the most efficient and complete
that can be afforded.''

Justice WHITFIELD again dissents and claims that there
are no distinguishing features between this case and the
case of *Howell* v. *Bush, supra,* and remarks:

''Entertaining their views of the doctrine of subroga-
tion it seems to me they should expressly overrule *How-
ell* v. *Bush,* and not leave it to further mislead the bench
and bar.''

Counsel for appellee cites with considerable assur-
ance the case of *Aetna Life Insurance Company* v. *Mid-
dleport,* 124 U. S. 534. The facts in this case are, that
the town of Middleport made a donation to a railroad
company of the sum of fifteen thousand dollars. In or-
der to cover this donation it attempted to issue fifteen

thousand dollars of bonds. These bonds were made payable to bearer and had no reference in them to any contract existing between the railroad company and the town; the bonds thus payable to bearer were delivered to the railroad company, and the railroad company sold them to the Aetna Life Insurance Company and made a simple delivery without indorsement, warranty or guarantee. Later the bonds were held to be absolutely invalid and of no effect whatsoever, and without consideration, etc. The Aetna Insurance Company sought to be subrogated to the claims of the railroad company under its agreement for donation. The court held, among other things:

"They (referring to the insurance company) took no guarantee.

It (referring to the town) simply delivered bonds which it had no authority to issue to the railroad company.

They (referring to the bonds) conferred no right on anybody and of course the transaction by which they were passed by that company to complainant could create no obligation, legal or implied on the part of the town to pay that sum to any holder of these bonds.

The fact that the bonds were void whatever right it may have given against the railroad company gave it no right to proceed upon another contract and another obligation of the town to the railroad company.

They are conclusive against the claim of complainant here who, in this instance, is a mere volunteer, who paid nobody's debt, who bought negotiable bonds in open market without anybody's indorsement, and as a matter of business."

We submit that this case is not in point. There was no privity of contract whatsoever, either in law or equity. The railroad company did not guarantee the bonds and did not indorse them and were not referred to in any way. There is nothing to show that any right they had went with the bonds.

In the case at bar, the mother of the children, Mrs. Brown, paid with her own funds the purchase money debt, and thinking she had full title gave a warranty title to her grantees; she not only indorsed but guaranteed this title, and gave to her grantees every right which she had. Had she or they known the facts no deal would ever have been consummated, and now she, as next friend, repudiates her warranty and guarantee, and brings this suit.

The only other question which addresses itself to the court is whether or not the grantees of Mrs. Brown, who was unquestionably subrogated, secured the same rights. Counsel for appellee claims that 94 Miss. 566, *Howell* v. *Hill,* is decisive on this point. An examination of this case discloses the following facts:

1st.  E. Bardwell and wife give a deed to a piece of land to William W. Bardwell, reserving a lien to secure four hundred dollars.

2nd.  Later E. Bardwell and wife make a deed to the same land which shows on its fact to be a gift to Howell and wife.

3rd.  Wm. W. Bardwell sold the same land to Hill for a cash consideration.

The contention, so far as this case is concerned, is that if Howell and wife did not get a good deed they received a transfer or assignment of, or were subrogated to, the lien reserved in the deed from E. Bardwell and wife to Wm. W. Bardwell.

The court held that section 2444 of the Code of 1892, the same as section 2774 of the Mississippi Code of 1906 did not make the vendor's lien a right or estate in the land.''

We contend that the cases are not similar. In the case at bar when Mr. Sullivan, the father of the children now claiming the land, and the husband of Mrs. Brown, died, the children each received a third interest and the wife a third, subject, however, to the debt for the purchase

money. There was a duty on the part of Mrs. Brown to pay this debt off before any of them would have a free and unincumbered title. She did pay off the debt to save her own estate, and paid the same from her own funds, and immediately became subrogated to the rights of the creditors against the interests of the children. She labored hard and with what she thought was success to get the title in her own name, and still acting under the belief that she did have full title, she alinated the land, with full warranty, and conveyed every right, title and interest she had in the land. Evidently when she sued on her breach of warranty by reason of the failure of the title she will have a right to defend by claiming that she is subrogated to the rights of the creditors, as against the adverse interests claimed by the true owners, unless, of course, she should by her action desire to perpetrate a fraud and defeat the ends of justice.

It is to be distinctly noted that appellants do not desire to deprive the children of their estates. Counsel for appellee remarks that to invoke the doctrine of subrogation, "would unjustly deprive two children of Sullivan of all their inheritance from him." We contend that this is an unfair statement. To invoke the doctrine of subrogation would not deprive the children of their inheritance at all. They would receive just what they received from their father. They would still have the two-thirds interest in the land, but they would be required, as they should be required, to pay their portion of the purchase money debt. Surely there is nothing unjust in this. But it would be unjust for their mother to carve for them an estate out of the pockets of her just creditors.

Subrogation is not a matter of contract. The doctrine is one of equity and unquestionably this is a case where equity demands that if the children desire to claim the property that they do so by doing equity, that is, paying their due proportion of the purchase money debt.

*Robert Powell* and *Frank M. Peyton,* for appellee.

We say the subject of subrogation has no application to this case. This court has universally held that where the doctrine of subrogation is invoked there must be some connection between the money secured by the lien which it is attempted to be subrogated to, and the money borrowed from the party who is attempting to use the rights of subrogation. That they must rely upon the incumbrance for security at the time that they part with their money, and that it must be advanced with the intention that they will be subrogated to the lien.

There is no evidence in this case that the Century Bank, in making its loan to Mrs. Brown looked to the Vendor's lien, in any manner, that was given by Sullivan to Persons five years before as security for their loan. In the language of the court, "They carved out their own security, they loaned their money on the faith, not of subrogation, but upon the hopes of a new deed of trust." The Century Bank was relying solely upon the new deed of trust that they were taking from Mrs. Brown as security for their loan.

In the case of *Berry* v. *Bullock,* 81 Miss. 463, the court says:

"Appellants carved out their own security. They loaned their money on the faith, not of subrogation, but on the hopes of a new deed of trust." Subrogation is not a universal remedy for parties who have lost their money. It has a sphere of relief plainly limited by its nature. It is a creature, not of contract, but of equity it is true, but equity cannot force subrogation on the parties. The case must be one in which its facts fit perfectly in the nature and purposes of subrogation.

In the case of *Howell* v. *Bush,* 54 Miss. 437, which is a leading case in this state upon the doctrine of subrogation, the facts as stated in said opinion are:

"One Franks bought from Mrs. Bevil and Eiland a hotel, for which he paid five thousand dollars cash and

gave his notes for four thousand, eight hundred dollars to Mrs. Bevil and one thousand, two hundred dollars to Eiland. They conveyed the property to Franks, who on the same day gave them a deed of trust to secure the same. Franks six days later conveyed the property to Howell for five thousand dollars cash, and his note due January 1, 1874 for six thousand dollars, to secure which Howell gave a deed of trust, and Howell and his wife took possession of the property and lived there.

When Frank's note fell due, failing to pay, the burden fell on Howell, who being unable to pay his note, applied to Bush, Patty & Company, offering if they would pay Mrs. Bevil, to give them a deed of trust on said land securing them. The proposition was accepted and Howell gave them his note for five thousand, eight hundred and fifty-four dollars, and to secure it on the same day executed a deed of trust to them, in which deed of trust Mrs. Howell did not join. The next day Bush, Patty & Co. paid Mrs. Bevil, took up Franks' note to her, and had the prior trust deeds marked satisfied.

When the trustee, on Howell's default, advertised the property the sale was enjoined by this bill on the ground of the wife's failure to join in the deed of trust, which attempted to convey their homestead. Bush, Patty & Co. in their answer and cross-bill, claimed that the exemption could not be held against money borrowed to pay for it, but they were entitled to Mrs. Bevil's security by subrogation.

In this case the court says: "Bush, Patty & Co. paid the money which extinguished the claim against Howell for the balance of the purchase money; but the deeds of trust which secured them were cancelled, and there was no understanding or agreement between the parties that Bush, Patty & Co. should stand in the place of the seller of the land. On the contrary the new deed of trust was executed to secure Bush, Patty & Co. the performance of the contract that he had made with them, and the original deeds of trust were entered satisfied and cancelled.

Bush, Patty & Co. as assignees of the note for pur-
chase money, secured by deed of trust, would have had
a claim on the property paramount to the claim of the
homestead exemption, but they do not occupy that posi-
tion.   They are independent creditors, strangers to the
original transaction, who took a new security, and did
not rely on the former, but had it extinguished.   They
cannot now shift their position, but must stand on their
chosen security.

The facts in this case do not indicate anything like
a design to keep the first incumbrance alive.   On the
contrary the parties do not seem to have looked to that
as constituting an available lien to appellees.   The fact
negatived any such intention, and showed clearly that ap-
pellees did not look to securing the rights of assignees
of the note for the purchase money, but to a new se-
curity.

The legal title to the lot was in Howell.   It was subject
to a deed of trust for the balance of the purchase money.
A new deed of trust was given by Howell to strangers
to the former transaction, and the old one was extin-
guished.   There was no intention to keep it alive.   It was
not relied on, and therefore was cancelled.

Subrogation takes place only where one has per-
formed the obligations of another or has paid his own
debt, the burden of which has, for valuable considera-
tion been assumed by another, or when he has paid in-
cumbrances for the protection of his own title or inter-
est, the payment of which he has not assumed by con-
tract.   44 Am. Dig., Century Edition, p. 3446-g; *Birk* v.
*Abbott,* 103 Ind. 1, 53 Am. Rep. 474; Digest Supreme
Court (U. S.), p. 5442, sec. 4, and numerous other cases
cited.

See also *Aetna Insurance Co.* v. *Middleport,* 124 U. S.
547, which is cited with approval in *Berry* v. *Bullock,*
*supra,* stating:   That the doctrine of subrogation in
equity requires first that the person seeking its benefits

102 Miss.—38

must have paid a debt due to a third person before he can be substituted to that parties rights. Second: That in doing this he must not act as a mere volunteer, but on a compulsion to save himself from loss by reason of a superior lien. or claims as in the case of sureties mortgagees. *Aetna* v. *Middleton,* 124 U. S. 534.

"A purchase money debt for land, secured by a vendor's lien, does not pass to°a subsequent grantee in a second warranty deed for the same land, executed by the grantor in the first one, the case not being within Code 1892, sec. 2444, providing that where a grantor does not own the entire estate which he purports to convey, his deed shall nevertheless invest the grantee with whatever right or estate he may have had in the lands. *Christina Howell et al.* v. *William Hill et al.,* 94 Miss. 177.

We contend that the decree of the chancellor was correct. That there was no question of the application of the doctrine of subrogation in this case. The Century Bank, having examined the title to the property to their satisfaction loaned the money without any reference to the vendor's lien, which had long since been cancelled out, and they are now invoking the doctrine of subrogation, which would unjustly deprive the two children of Sullivan of all their inheritance from him.

SMITH, C. J., delivered the opinion of the court.

In July, 1906, Mr. J. R. Sullivan died intestate, leaving as his heirs his wife, who is now Mrs. M. A. Brown, and two children, Robert and Otero Sullivan, appellees herein. Prior to his death he had purchased from J. W. Persons the land here in controversy for the sum of one thousand, six hundred and twenty-seven dollars and twenty-one cents, payable in installments of twenty-five dollars per month. At the time of his death practically nothing had been paid on the purchase money of this land, which, including interest then due, amounted to about one thousand, eight hundred dollars. He left an

insurance policy on his life for the sum of two thousand dollars, payable to his wife, which was collected by her after his death. The notes executed by Sullivan covering the purchase money of this land were by Persons assigned to the Merchants' Bank, of Jackson, Miss. At the death of her husband Mrs. Sullivan was advised by Mr. Persons, who seems to have been a friend of the family, to invest this insurance money in the purchase of a home. They decided that it would be best for her to purchase the property in controversy; and both of them were under the impression that, if she paid the notes executed by her husband therefor, Persons could then execute to her a deed to the land, and she would thereby acquire title thereto, and this course was in good faith pursued. Mrs. Sullivan paid the bank. It canceled the vendor's lien, which had been retained by Persons to secure the payment of the notes, and Persons executed to her a deed to the land. Some time afterwards Mrs. Sullivan, who had then become and is now Mrs. Brown, executed a deed of trust on the property to W. C. Wells, Jr., trustee, to secure an indebtedness of six hundred dollars to E. M. S. Barrett. Some time after the execution of this deed of trust, Mrs. Brown borrowed the sum of seven hundred dollars from the Century Banking Company, and executed to it a deed of trust on the property to secure the payment of the money borrowed. Failing to pay the debt secured by this last-named deed of trust on the maturity thereof, it was foreclosed, and the property bought in by W. A. Sessions, who assumed the indebtedness due E. M. S. Barrett and secured by the first deed of trust. Afterwards this property was sold by Sessions to appellant, Robertson, who also assumed the indebtedness due Barrett.

All the parties to these instruments thought that Mrs. Brown was the owner of the land. She herself thought so, and seems to have acted in perfect good faith in the matter. No question of her children's interest in the

land arose during the negotiations leading up to the execution of these instruments. The Century Banking Company had an abstract of title of the property made before lending Mrs. Brown the money; but the abstractor failed to discover the deed from Persons to J. R. Sullivan, the former husband of Mrs. Brown, although this deed was duly acknowledged and recorded. After appellant became the owner of this land, Mrs. Brown discovered that she did not have the full legal title thereto; that she only owned a one-third interest therein, the other two-thirds being owned by her children, Robert and Otero Sullivan. Whereupon she instituted this suit in the court below, as their next friend, praying that all of these instruments, other than the deed from Persons to her husband, be canceled, that they be decreed to be the owners of a two-thirds interest in the land, and that it be sold for a partition. Appellant made his answer a cross-bill, setting up the foregoing facts, and praying that, if the court should find that complainants are entitled to a two-thirds interest in the land, they be decreed to pay him two-thirds of the one thousand, eight hundred dollars paid by Mrs. Brown in order to obtain a cancellation of the vendor's lien securing the purchase-money notes therefor executed by their father, J. R. Sullivan, and that, if necessary, appellant be subrogated to all the rights that the Merchants' Bank had as holder of the vendor's lien securing these notes. From a decree denying the prayer of this cross-bill, adjudging appellees to be the owners of a two-thirds interest in the land, and ordering a sale for partition, this appeal is taken.

In order to reach a correct solution of this controversy, it is not necessary for us to review the various decisions of this court cited by counsel, but simply to keep in view certain elementary principles of the law of subrogation, with which these decisions are in full accord. "Subrogation is the substitution of one person in place of another, whether as a creditor or as the pos-

:sessor of any rightful claim, so that he who is substituted succeeds to the rights of the the other in relation to the debt or claim, and to its rights, remedies, or securities." Words and Phrases, vol. 7, page 6722. "The doctrine is one of equity and benevolence, and, like contribution and other similar equitable rights, was adopted from the civil law, and its basis is the doing of complete, essential, and perfect justice between all the parties, without regard to form, and its object is the prevention of injustice. The right does not necessarily rest on contract or privity, but upon principles of natural equity, and does not depend upon the act of the creditor, but may be independent of him, and also of the debtor." 37 Cyc. 363. As was said by Chief Justice SHARKEY in *Blackwell* v *Davis,* 2 How. 812, the doctrine of subrogation is "the offspring of natural justice, and courts should rather incline to extend than to restrict the operation of a principle so elevated and pure." It applies, in general, "whereever any person, other than a mere volunteer, pays a debt or demand which in equity or in good conscience should have been satisfied by another, or where a liability of one person is discharged out of the fund belonging to another, and where one person is compelled for his own protection, or that of some interest which he represents, to pay a debt for which another is primarily liable, or wherever a denial of the right would be contrary to equity and good conscience." 27 Am. & Eng. Ency. of Law (2 Ed.), 203. And "whenever a party has such an interest in property as makes it incumbent on him to get in an outstanding claim or equity for its protection, good conscience dictates that he shall have all the rights which the holder of the equity had." *Staples* v. *Fox,* 45 Miss. 667.

In paying the notes executed by her former husband, covering the purchase money for this land, and obtaining a discharge of the vendor's lien securing them, Mrs. Brown was not a mere volunteer. She had the right to

do this, in order to protect her interest in the land, and to look to her co-tenants for reimbursement to the extent of their proportionate interests therein. If these cotenants desire to retain their interests in the land, equity and good conscience demand that they reimburse Mrs. Brown; and, if necessary for complete justice to be done her, equity will treat this vendor's lien as still existing and enforce it for her benefit. It is true that in paying these notes Mrs. Brown labored under the mistaken belief that she was thereby obtaining a complete title to the land, and did not do so with the intention of looking to her cotenants for reimbursement. She acted, however, in perfect good faith; and if her cotenants are not willing for her title to the land to stand, equity and good conscience demand that they reimburse her, or rather appellant, who has succeeded to her rights. They cannot keep the land and Mrs. Brown's money, too, but, of course, can elect which they will retain.

To this right of Mrs. Brown appellant has succeeded by reason of the deed of trust executed by her, the foreclosure thereof, and the subsequent purchase by him. *Bonner* v. *Lessley,* 61 Miss. 392.

*Reversed and remanded.*