## GRENADA BANK *et al. v.* YOUNG.*

(Division B.    May 25, 1925.)

[104 So. 166.    No. 24796.]

SUBROGATION.    *Tax collector held, under circumstances, entitled to sub-
    rogation to tax lien.*

    Tax collector, who on instruction of landowner to issue receipt for
    taxes and draw on him for amount did so, making the records in
    his office show the taxes paid, and on draft not being paid, paid
    the taxes out of his own private funds, at next settlement with
    treasurer, is entitled to be subrogated to the tax lien of the
    county and state for the taxes on the land, and to have it de-
    clared superior to the mortgage liens thereon; he not being a
    volunteer, but having become morally, if not legally, obligated to
    pay the taxes; dishonor of draft amounting to request by land-
    owner that collector pay the taxes for him, and Laws 1922,
    chapter 275, as to conventional subrogation in the circumstances
    there named, being inapplicable.

*Headnote. Subrogation, 37 Cyc., p. 470.

APPEAL from chancery court of Calhoun county.
HON. J. G. McGOWAN, Chancellor.

Suit by C. R. Young against the Grenada Bank and
others.    From an adverse decree, defendants appeal.
Affirmed.

*Creekmore & Creekmore,* for appellants.

The sole question presented to this court for decision
is whether Mr. Young, the tax collector, when he issued
tax receipts, and made his settlement for taxes with the
state and county, thereby became entitled to be subro-

gated to the rights which the state and county would have had for the enforcement of the taxes, had they not been paid.

It will perhaps be best to deal first with this question under the common law. It is too well established for argument that at the common law a mere volunteer who, having no interest to protect and without any legal or moral obligations, pays the debt of another is not entitled to subrogation without an agreement to that effect or an assignment of the debt, the payment in his case absolutely extinguishing the debt. 37 Cyc. 375.

It is hard for us to see how the appellee could be treated other than as a volunteer. The bill shows that the tax receipts were issued by him, and the draft accepted in payment thereof only as accommodation for Mr. Lawrence and when he was under no legal or moral duty to do so, and when by doing so no right or interest of his own would be protected. Mississippi has passed directly on this question in *Griffing* v. *Pintard*, 25 Miss. 173.

This general rule laid down in *Griffing* v. *Pintard*, was also recognized in *Ingersoll* v. *Jeffords*, 55 Miss. 37, and *Reid* v. *Y. & M. V. Railroad Company*, 74 Miss. 769. See also 26 R. C. L. 375; *Mercantile Trust Company* v. *Daniel W. Hart*, 76 Fed. 673, 35 L. R. A. 352 (1896); *Gibson* v. *Western & Southern Life Insurance Company*, L. R. A. 1915D 697 (Kentucky, 1914). The notes appended to *Bibbins* v. *Clark*, 29 L. R. A. 282, and especially that appended to *Gibson* v. *Western & Southern Life Insurance Company, supra,* at page 697, gives a full and complete discussion of the subject.

Thus it seems that at the common law as construed by the courts of Mississippi as well as by the courts of other states where the question has been submitted to them, it has been uniformly held that a person paying taxes is not entitled to the right of subrogation which the state would have had.

The reasoning in *Speery* v. *Butler*, 75 Conn. 369, 53 Atl. 899, as shown in the note in L. R. A. 1915 D at 699,

seems to us to be especially persuasive as to why the right of subrogation should be denied in cases of this kind.

The Mississippi legislature for the year 1922 evidently recognized that in certain cases an assignment of tax liens should be allowed. It therefore passed chapter 275, Laws of 1922. This statute provided the method whereby, after the issuance of tax receipts, the lien for such taxes could be assigned and kept in force. In this case, the bill shows that no effort whatever has been made to follow the provisions of this chapter. This statute changed common law on the subject and should be strictly construed.

We submit that no right of subrogation was given to the appellee by the common law, and since the statutory method provided has not been followed, the relief prayed by the appellee should be denied, the judgment of the lower court be reversed, and judgment entered for the appellant.

*Thomas H. Haman,* for appellee.

The tax collector was not a volunteer. The bill does allege that the tax receipts were issued, without qualifying it by the allegation that they were attached to draft detained by the banks, but we submit that under the allegations of the bill, such proof could be made.

We submit further that even had the receipts, as may be inferred from the language of the bill, been issued directly to the owner on the issuance of the draft, had the draft been returned without delay by the banks, so that the tax collector could have known that it was not paid before he was compelled by law to make settlement with the state and county and had to pay in the taxes, he could have refused to pay in and have sold the land for the state and county for the taxes due on it; that he had a right to assume that the draft had been paid; that the banks had notice of the law which required the tax collector to settle with the state and county by the twentieth of the month. The allegations of the bill that he was com-

pelled to pay, in the money is tantamont to a statement that he waited until the last minute to do so.

The allegations of the bill are to the effect that the state and county had a lien for taxes with special remedies provided for its enforcement, which the tax collector could have enforced but for the fact that the banks between them delayed the drafts and by their fault with the owner prevented the enforcement of the state and county lien by the special remedy provided, so that he had to make payment to the state and county. We submit that the tax collector was then subrogated to the lien of the state and county without the special remedy of enforcement, and hence he seeks relief in equity.

The lien, but not the special statutory remedy of the state is kept alive for his protection. This is not the case of *Griffing* v. *Pintard,* 25 Miss. 173. In that case it was sought to enforce the lien under the special statutory remedy of enforcement provided alone for the state. Besides this, there was nothing in that case to show that the tax collector did not voluntarily pay the taxes. That case holds that a tax collector having paid taxes on land is not subrogated to the rights and remedies of the state merely on account of the payment of taxes. The statute providing method of sale is for enforcement of payment of taxes to the state, and not on behalf of any individual, and he may not have the statutory remedies of method of sale.

In *Ingersoll* v. *Jeffords,* 55 Miss. 37, the court holds that Jeffords having been rightfully assessed with the land, although not owning same at the time of the payment of the taxes, was not a mere volunteer, and hence had the right to make the payment to protect himself from enforced payment by suit or sale of his other property, although of course the court recognized that, without his payment of the taxes, the land itself could have been sold for the taxes against it. He therefore, on payment of the taxes, was subrogated to the lien of the state against the land. Their holding was in fact that Jeffords knew that at a tax sale of the land the state would

purchase, in case of no other bidder, for the taxes against
it. But Jeffords, the land being assessed to him right-
fully, could not buy title at a sale for taxes. Such pro-
cedure would have been useless, as he would thereby
have gotten only a lien by the payment of the taxes. So
the tax collector in the case at bar could not have as-
signed the lien to himself under chapter 275, Laws 1922.
It was a useless procedure. He would have only had
thereby the lien occasioned by the enforced payment of
the taxes.

The Jeffords case announced the doctrine that one who
comes under any legal liability to pay the taxes on the
property of another is not a volunteer, and has the right
to pay the taxes to protect himself and on such payment
is subrogated to the lien of the state against the property.

The doctrine is probably more clearly announced in
*Reid* v. *Y. & M. V. R. R. Company*, 74 Miss. 673, 21 So.
745, that where one gets in the position that he is legally
liable to pay the taxes on another's land is not a volun-
teer and is subrogated to lien on his payment of such
taxes. Chapter 275, Laws of 1922, is a statute extending
the special statutory method of enforcement of the state
to an individual for enforcement of the lien on certain
procedure. But this would not have helped the tax col-
lector, since he could not have assigned his right to him-
self, and an attempt at such useless procedure for him
would have left him without the statutory remedy, so that
only equity could interpose for his relief.

Argued orally by *Rufus Creekmore*, for appellants,
and *Thomas L. Haman*, for appellee.

ANDERSON, J., delivered the opinion of the court.

Appellee filed his bill in the chancery court of Calhoun
county against appellants, seeking to be subrogated to
the tax lien of the state and of Calhoun county on certain
lands in said county for the payment of the state and
county taxes thereon for the year 1922. One of the ap-

pellants, W. O. Lawrence, was due to pay the taxes for the year 1922 assessed against the lands described in the bill. Appellee, who was sheriff and tax collector of Calhoun county at the time, paid the taxes for Lawrence, who failed to reimburse appellee for his outlay. Conceiving that, by virtue of his payment of the taxes and the failure of appellant Lawrence to reimburse him therefor, he thereby became entitled to be subrogated to the lien of the state and county against said lands for the taxes so paid, appellee filed the bill in this cause for that purpose. Appellants demurred to the bill, which demurrer the court overruled and granted appellants this appeal to settle the principles of the cause.

A fair interpretation of the bill, as we read it, makes this case for appellee: Appellant, W. O. Lawrence, as stated, owned during 1922, or had such an interest in, a considerable quantity of real estate in Calhoun county, as that under the law it was his duty to pay the 1922 state and county taxes thereon. He wrote appellee, who was sheriff and tax collector of Calhoun county at the time, that he desired to pay the taxes on said lands for the year 1922, and instructed him to issue receipts therefor, and draw on him for the necessary amount for that purpose. Accordingly, on or about February 1, 1923, appellee, as sheriff and tax collector, issued receipts to appellant Lawrence for the taxes on said lands for the year 1922, making the records in his office, including the duplicate receipt book, show that the said taxes had been paid, and drew a draft on appellant, Lawrence, for the amount. This draft (quoting from the bill) "was presented to the Farmers' Bank (one of the appellants), and it passed on to the Calhoun County Bank (another one of the appellants), and was detained by these banks, and complainant as tax collector had to make settlement with the state and county for the taxes for which he had issued receipts, and did so." The draft had not been met when appellee's next monthly settlement was due, as we gather from the bill. Conceiving that it was his duty under the circumstances to pay said taxes in his settlement with

the treasurer, he proceeded to do so out of his own private funds. At the time there were, and still are, mortgages on the land in favor of appellants, Farmers' Bank and Calhoun County Bank, a branch of appellant Grenada Bank. As stated, appellee sought by his bill to be subrogated to the tax lien of the state and county on these lands, and have such lien declared superior to said mortgage liens, and have the land sold to discharge the incumbrances in that order.

This court has taken an advanced position on the doctrine of equitable subrogation. The doctrine is one of equity and benevolence; its basis is the doing of complete and essential justice between the parties without regard to form. It rests upon principles of natural right and equity. The court should rather incline to extend than restrict the operation of the doctrine. It applies wherever any person, other than a mere volunteer, pays a debt or demand, which in equity or good conscience should have been satisfied by another, or where one person finds it necessary for his own protection to pay a debt for which he is not primarily liable, or where one has such an interest in property as makes it necessary for him to get in an outstanding claim or equity for its protection, or where one discharges an incumbrance of another at the latter's request. *Prestridge* v. *Lazar,* 132 Miss. 168, 95 So. 837; *Union Mortgage, Banking & Trust Co.* v. *Peters et al.,* 72 Miss. 1058, 18 So. 497, 30 L. R. A. 829. Applying these principles to the facts of this case we think leads to the affirmance of the case. We have here a case where to hold otherwise would be, it seems, most unfair and unjust to appellee. Having faith in the draft of appellant W. O. Lawrence being honored, he issued tax receipts on the lands and made the records in his office show that all taxes thereon for the year in question had been paid.

It is true, to start with, appellee was under no obligation to comply with the request of appellant Lawrence. He was entitled to demand and receive the payment of the taxes in cash. But, doubtless following a practice of convenience, he issued the tax receipts and made the

records in his office show the payment of the taxes and draw a draft on the taxpayer. When the time for his monthly settlement arrived the matter had not been adjusted. Believing that, as between the public and himself, he was bound to pay these taxes, he did so out of his own private funds. Appellants, the banks, having mortgages on the lands, held such mortgages subject to the tax liens. If now appellee's claim is made subordinate to the mortgages, it will result solely from appellee's misplaced trust in the draft being honored. Although appellee was under no obligation to pay the taxes when he issued the receipts and drew the draft, he did become obligated to do so when the period of his monthly settlement came around and found the taxes on this land in the condition stated.

Appellants, to sustain their view, rely on chapter 275, Laws of 1922; *Griffing* v. *Pintard,* 25 Miss. 173.; *Ingersoll* v. *Jeffords,* 55 Miss. 36; *Reid* v. *Y. & M. V. R. R. Co.,* 74 Miss. 769, 21 So. 745; 26 R. C. L. 375, section 333; 37 Cyc. 376; and cases cited in the notes in the two latter authorities. Appellants lay special emphasis on the principle as laid down in 26 R. C. L. 375, section 333. It is there stated that if a tax collector receives checks in payment of taxes, and pays into the treasury the amount thereof in cash, he is not entitled to be subrogated to the rights of the public in the taxes paid in case the checks prove worthless. We have not examined all the cases cited in support of that text. We are therefore unable to state whether subrogation was therein sought both to the lien, and the statutory remedy of the public for its enforcement by advertisement and sale to pay the taxes, or whether subrogation was only sought to the tax lien by private suit. But even if they'be squarely in point, we decline to follow them, because in our judgment they are unsound.

We have examined carefully the Mississippi cases relied on by appellants. The question involved in *Griffing* v. *Pintard, supra,* was whether the tax collector was entitled to both the lien and the remedy for its enforcement

which the law gave the state. The tax collector had paid the taxes voluntarily, and, not having been reimbursed by the taxpayer, proceeded to enforce the remedy. given the public for the collection of delinquent taxes by advertisement and sale according to the statute. The court held that the purchaser at such sale got no title because the taxes had been paid. The state therefore had no remedy because it had no right. That was not a case where the tax collector had filed a bill in the chancery court seeking to be subrogated to the tax lien of the public by virtue of having paid the tax, nor was there anything to show that the tax collector had paid the tax as a result of being required so to do growing out of his dealings with the taxpayer.

We do not understand the case of *Ingersoll* v. *Jeffords, supra,* to give appellants any support. The facts of that case were, in substance, as follows: A tract of land was assessed to Jeffords, who held a tax title thereto. Jeffolds had no title to the land. A court with jurisdiction of the subject-matter and parties so adjudged and ordered the land to be sold. It was sold and bought by another than Jeffords. Some months after the sale Jeffords paid the taxes due for the then current year, and thereupon filed his bill in the chancery court against the purchaser to be subrogated to the tax lien of the public which he had discharged by such payment. The court held that Jeffords not only acquired personal demand against the purchaser at the judicial sale for the taxes so paid, but was subrogated to the lien of the public against the land to enforce payment.

In *Reid* v. *Y. & M. V. R. R. Co., supra,* the court held that a purchaser at a tax sale, who pays the taxes thereon believing the land to be his own, can, after his title is defeated by the real owner, enforce a lien on the land for the payment of the taxes.

Chapter 275, Laws of 1922, provides for conventional subrogation in the circumstances therein named, and does not include the sheriff and tax collector himself either in terms or by intent and purpose.

We hold that appellee was not a volunteer when he paid these taxes. On account of his dealings with appellant Lawrence he had become, to say the least of it, morally, if not legally, obligated to pay the taxes out of his own funds in his settlement with the treasurer. The dishonor of the draft was at least tantamount to a request by appellant Lawrence that appellee pay his taxes for him.

*Affirmed.*