Love, Superintendent of Banks, *v.* Robinson *et al.*

(Division B.   Nov. 9, 1931.)

[137 So. 499.   No. 29563.]

See, also, 137 So. 501.

**F. W. Bradshaw** and **Flowers, Brown & Hester,** all of Jackson, and **Brandon & Brandon,** of Natchez, for appellant.

**Jones & Stockett,** of Woodville, for appellees.

Griffith, J., delivered the opinion of the court.

The Bank of Commerce of Natchez, a duly admitted state bank, with a capital stock of fifty thousand dollars, was on March 8, 1929, found to be insolvent, and on that day, in pursuance of a resolution of the board of di-

rectors, appellant as superintendent of banks took charge of said bank for the purpose of its liquidation. As soon as appellant had come thus in charge of said bank and had been able to make a correct appraisal of its assets, he discovered, and it was officially so adjudged by him, that it would require all the collectible assets of the bank plus the sum of fifty thousand dollars to pay all the depositors; in other words, that it would require all the bank's assets plus the entire amount of the stockholders' statutory liability to pay the depositors in full. Instead of awaiting the ordinarily slow process of the collection of the stockholders' liability, appellant advanced the amount thereof, to-wit, the sum of fifty thousand dollars, and by a further arrangement accomplished by him to that end, he succeeded in paying off all the depositors, without serious delay. Appellant thereafter called upon the stockholders to pay in to him the amounts of their respective statutory stockholders' liability, and while the majority of the stockholders promptly paid, appellees have declined, and appellant has filed a bill against them seeking relief by way of subrogation. A demurrer was sustained to the bill on the ground that appellant was a volunteer and is entitled to no relief.

The broad general principles governing the doctrine of subrogation are well settled and are liberally upheld in this jurisdiction; but in all the statements of the doctrine there is the exception that a mere volunteer is never entitled to relief. Grenada Bank v. Young, 139 Miss. 448, 454, 104 So. 166; Prestridge v. Lazar, 132 Miss. 168, 95 So. 837; Robinson v. Sullivan, 102 Miss. 581, 59 So. 846. The problem, therefore, in many cases, is to determine whether the person claiming the benefit of subrogation is or is not a volunteer. There is no difficulty in excluding as a volunteer one who is an intermeddler, who has nothing to do with the transaction, or who officiously intrudes himself without public or private invitation into a matter which, to use a common expression, is none of his business. But to say that one

who has nothing to do with the transaction is a volunteer, and that, on the other hand, one who has some legitimate concern therein is not a volunteer, still does not fully cover the question, for the latter statement in the converse would be no accurate summary of the rule. This may be illustrated by the cases which hold that a tax collector, although he has to do with the collection of taxes, is a volunteer when without request of the taxpayer the taxes are paid by the collector; the sufficient reason being that in so doing he cuts off the privilege or option, of which the taxpayer may have wished to avail, to allow the property to sell and take the two years' time to redeem, whereas, if without the taxpayer's invitation or consent the tax collector pays the taxes and if thereupon the right of subrogation in the tax lien should be allowed in behalf of the tax collector, the lien would be at once exigible, thereby shortening the time which otherwise the taxpayer would have had the privilege to take.

Without going further or undertaking to define the line of demarkation, it is sufficient for the purposes of this case to refer to the subsidiary principle, which the distinct trend of the reported cases has established, that one who has an active interest or concern in the nature of a definite managerial responsibility in respect to the payment of enforceable demands against an estate in hand, and who, although under no legal or moral obligation personally to pay, nevertheless in the actual and beneficial interest of the estate being administered does so pay, and thereby takes care of obligations which rest upon another or others, the said payer may be entitled to the benefit of subrogation, provided no option or privilege of the person primarily or actually liable is thereby intercepted, or abridged or substantially altered. The above subsidiary principle is illustrated by the holdings, upon which the courts are generally agreed, that an administrator or executor or active trustee in an express

trust who personally pays the incontestible debts against the trust estate may be subrogated so as to stand in the rights of the creditors whose debts or securities were thus paid. In such cases the manager-trustee does not officiously intrude himself as an intermeddler. On the contrary, he has acted toward the ends which his official duties require ultimately to be accomplished through his management, and in thus advancing the interests of the estate, he does nothing which adversely affects the rights, or privileges of those in respect to whom he has acted.

That, as we see it, is the essence of the case we have here in hand. It is the managerial duty of the superintendent of banks, not only to collect, as speedily as possible consistent with good judgment, all the assets of an insolvent bank lawfully put under his charge for liquidation, these collections to include the statutory stockholders' liability whenever it is ascertained that the other assets of the bank will be insufficient to pay depositors in full, but it is also the duty of said superintendent, out of these assets including said stockholders' liabilities, to pay the depositors pro rata as rapidly as good management will permit and finally in full, and if, in order to do so, it be necessary to draw on the depositors' guaranty fund, he must do that, if that fund be in available condition, and this latter may and must be done in anticipation, under certain circumstances mentioned in the statute, in force at the time this bank failure occurred. Section 3792, Code 1930, and previous statutes noted thereunder. It is not necessary to make a further elaboration or statement to disclose that this case falls within the established subsidiary principle which protects administrators, executors, and active trustees who have done as the superintendent has done here.

We are unable to follow the further argument of appellees that the inference to be drawn from the bill is that the superintendent took the sum advanced, out of

the depositors' guaranty fund, and that there was in some way a violation of the law in doing this, wherefore appellant being a wrongdoer can have no relief. If appellant personally advanced this money to himself as superintendent of banks out of his own private funds, then he is none the less entitled to recover the same as superintendent and thereupon to reimburse himself, as an individual, and no wrong is or has been done therein or thereby; there being no intimation or suggestion anywhere that by the arrangement or any part thereof, appellant was to receive any sort of personal reward or pecuniary benefit. And if he advanced it out of the depositors' guaranty fund, he is under duty to recover it so as to reimburse that fund, even if in the handling of that fund in the manner mentioned there was some official misconduct therein or mismanagement thereof, under the letter of the law—as to which latter we express no opinion or any intimation thereof. If the bank depositors' guaranty fund is to be regarded as a general public fund belonging to the entire state, then the state has done no wrong in respect to it, for the state can do no wrong. If that fund is to be regarded as a quasi-public fund belonging in trust to that large class of the public who are bank depositors, the result would be the same, for that large class of the public to which it belongs has done no wrong in regard to it. We think it may be laid down as a sound rule that the reimbursement of public or quasi-public funds is not to be defeated by the private defense of the want of clean hands, on account of any official delinquencies or mismanagement of that fund, and as to which there has been no injurious consequences, beyond those that are fanciful or illusory, to those raising that defense. The tacit, but nevertheless actual, recognition of that rule is found in the entire general course of the vast amount of litigation that has gone through the courts of this state in cases involving public

or quasi-public funds during a long series of past years. Besides, the objection aforesaid must be raised by a special demurrer, not one which contains general grounds as in this case. Grif. Chan. Prac., sec. 295. This is true, because even if the superintendent of banks were barred out of this suit, the Attorney General would not be, in so far as the public or quasi-public fund is concerned, thus illustrating that a procedural point is not to be allowed to foreclose the entire case on its merits, as would be under a general demurrer.

Reversed and remanded.