FEDERAL LAND BANK OF NEW ORLEANS *et al. v.* NEWSOM *et al.*

(Division B.   June 3, 1935.)

[161 So. 864.   No. 31732.]

James McClure, of Sardis, for appellants.

Butler & Snow and L. F. Easterling, of Jackson, for appellants.

**John W. Crisler,** of Clarksdale, and **Herbert Holmes,** of Senatobia, for appellees.

Argued orally by **L. F. Easterling** and **James McClure** for appellant and by **John W. Crisler** and **Herbert Holmes** for appellee.

**Griffith, J.,** delivered the opinion of the court.

Dr. Thos. C. Newsom died testate in Tate county on July 13, 1906, the decedent having at the time a fixed place of residence in said county. Shortly thereafter

his will was probated in that county. He left surviving him as his sole heirs at law his widow, Mrs. L. J. Newsom, and three minor children, namely, Thos. C. Newsom, Bruce D. Newsom, and Nathan W. Newsom. At the time of his death, Dr. Newsom, the testator, was the owner of several tracts of valuable land. So far as concerns the parcel involved in this case, the will devised the same as follows:

"I give and bequeath to my son Bruce D. Newsom during his natural life and then to the heirs of his body the lands in Panola County, Mississippi, described as Section 7, except the South half of the Southwest quarter, in Township 8, Range 9, comprising 560 acres more or less." There are subsequent portions of the will providing for contingencies, but since the contingencies mentioned have never happened and could not now affect the above specific devise, we omit any quotation of those provisions.

On the attainment of his majority, Bruce D. Newsom married and there were born to him two children, Mary Jane Newsom and Nancy Cavett Newsom, who now survive. Bruce D. Newsom died in 1928.

It must have been supposed theretofore that there was some question as to the validity of the will of Dr. Thos. C. Newsom; for it is found that on July 15, 1918, the widow quitclaimed to Bruce D. Newsom all her interest in the described land, and the two brothers, soon thereafter, on attaining their majority did the like. And while the land records of Panola county showed that Dr. Newsom, at the time of his death, was the owner of said lands except for the tax title now to be mentioned, the tax records disclosed that all of the land described was sold to the state in 1875 for the taxes due thereon for the year 1874. In the years 1919 and 1920, members of the Newsom family procured forfeited tax land patents from the state covering in the aggregate all said lands, which title or claim of title they conveyed to Bruce D. Newsom. All the deeds herein mentioned were duly recorded.

In 1924, Bruce D. Newsom applied to the land bank for a large loan on said lands and furnished an abstract of title thereto. The will of Dr. Newsom had not been recorded in Panola county, and the abstract did not disclose the existence of the will. The bank made the loan taking therefor a deed of trust on said lands in the belief that Bruce D. Newsom was the owner of a fee-simple title. After the death of Bruce D. Newsom, the payments on the loan became in arrears, and also the taxes thereon. The taxes were not paid for the year 1930, and on April 6, 1931, the lands were sold to the state for the said delinquent taxes. The taxes for the years 1931 and 1932 were not paid, and on April 5, 1933, the bank redeemed the tax sale and paid the remaining delinquent taxes.

On April 12, 1934, the bank filed its bill to foreclose the deed of trust, and to have included therein by way of subrogation a lien for the taxes paid as aforementioned. The bill sets up all the facts in ample detail. The defendants, the two children of Bruce D. Newsom, demurred to the bill, and from the ruling of the chancellor both sides were granted appeals.

The first point in controversy between the parties is the contention by appellants that the will of Dr. Newsom is void under the so-called two-donee statute, section 2436, Code 1892, in effect at the time of the execution of the will and at the death of the testator. There has, of course, never been any intimation anywhere that that statute made any interference with the right of a testator to devise lands to a certain person for life with remainder to the heirs of the body of that person. That the statute did not interfere with that right was, in effect, so held in Lazard v. Hiller, 145 Miss. 449, 110 So. 855, 112 So. 585, and it could not be held otherwise in view of section 2114, Code 1930, which is a re-enactment of the same section in previous Codes. Bruce D. Newsom was the life tenant named in the will, and as to this particular land the first donee thereunder, and his two children,

Mary Jane Newsom and Nancy Cavett Newsom, are the immediate remaindermen in fee. The fact that subsequent portions of the will, providing for contingencies which as to these two children have never happened, might make the will void as to those claiming under a state of facts brought about by the contingencies, does not in the slightest affect the right and title of the two children above named as the remaindermen in fee upon the death of their father, the life tenant. The rule is that those portions of the will which violate the statute are rejected, while the valid portions are allowed to stand and are enforced, if practicably possible and so long as so to do will not defeat the dominant purpose of the will. Reddoch v. Williams, 129 Miss. 706, 92 So. 831; Lazard v. Hiller, supra. The two children above named have now taken, therefore, as remaindermen, a fee-simple title under the will, as it was the principal purpose of the will that they should do, so far as they are concerned. Stigler v. Shurlds, 131 Miss. 648, 95 So. 635.

The second point made by appellants is that because the will had not been recorded in Panola county in which county the lands here in question are situated, the will was ineffective as an instrument of title as against appellant bank which took the deed of trust without actual notice of the existence or contents of the will. It has been decided in this state that a foreign will is ineffectual as to lands in this state unless and until the will has been probated in this state, Virginia Tr. Co. v. Buford, 123 Miss. 572, 595, 86 So. 356, 516, but the exact question now before us has not been decided by our court, nor by any other Supreme Court, as counsel for both sides inform us after a diligent search among all the reported cases.

Appellants argue that a will is the equivalent of a conveyance; and that since sections 2146, 2147, Code 1930, make unrecorded conveyances void as to purchasers for value without notice of lands in any county wherein the conveyance is not recorded, the failure to record the will in Panola county entitles the bank to the protection of

those sections. A will differs from a conveyance in vital particulars among which is that a conveyance takes effect and is irrevocable upon delivery, whereas a will although delivered is not effective until the death of the testator and in the meantime is revocable. The authorities generally agree that a will is not a conveyance. See cases cited, 13 C. J., p. 903, note 78.

Appellants rely also upon section 1613, Code 1930, which in its concluding sentence provides that "authenticated copies of such wills may be recorded in any county in this state;" and they argue that the word "may" in that sentence should be construed as meaning "shall." The conditions which require a court to construe the legislative word "may" as meaning "shall" are not present here. In addition, we may take notice of the course of practice in legal matters, and in so doing we know that in the long length of years during which this provision has been a part of the statutes it has not been the practice to record domestic wills in other counties than that of the original probate, except for convenience, as, for instance, where subdivisions of many lots are being sold to many different purchasers, and a will lies back of the chain of title to all the several lots or parcels.

When an examiner of a land title finds that the title has come down by mesne conveyances from the government to John Doe, and the succeeding conveyance in the chain of title is from the heirs at law of John Doe, three questions present themselves to the examiner of the title: (1) Did John Doe leave unpaid probated debts which stand as a charge against the land in the hands of the heirs? (2) Did John Doe die testate or intestate? and (3) If intestate, who, in actual fact, were or are his heirs at law? In order to ascertain the facts upon the first inquiry, it is necessary to examine the record of estates in the office of the chancery clerk of the county where the deceased had at the time of his death a fixed place of residence. Section 1629, Code 1930. And that is exactly the same county where the will of the deceased

will be found if the deceased died testate, and in the same file of estate papers. Section 1599, Code 1930. And these same papers will often disclose the names of the heirs at law. Since the examiner is obliged, at his peril, to examine the estate papers in the estate of John Doe in the county in which John Doe at the time of his death had a fixed place of residence, and which will disclose the probate of the will, if there be any will, there is no substantial reason for any mandatory requirement that the will be recorded in other counties, and we hold that it is not so required. A domestic will, when probated and recorded in the county in which the testator had at the time of his death a fixed place of residence, is notice throughout the state, without the necessity of recording the will in any other county.

The third point involved is the contention by appellants that although B. D. Newsom had only a life estate under the will, he obtained a fee-simple title through the forfeited tax titles of 1875 acquired by him in 1919 and 1920. There is but little said in the argument on this subject, and we will deal with it only briefly, and to the effect that appellants' contention is not well taken. During the continuance of the life estate, a life tenant who has entered into possession under the deed or devise granting to him the life estate cannot acquire outstanding hostile claims against the title under which he went into possession, and this applies equally to any person holding under the life tenant. This is the general rule under the weight of authority, some of the cases so holding being found in 21 C. J., p. 942, notes to sec. 74. This rule runs so strongly that it is said that "a tenant for life cannot acquire an outstanding paramount title and gain any rights as against the remainderman by claiming thereafter to hold by adverse possession unless it appears that he has clearly renounced all claim as tenant to the knowledge of the remainderman." 17 R. C. L. p. 643.

The fourth point is the prayer by appellants that the

bank be reimbursed by way of subrogation in respect to the taxes paid by the mortgagee, and we think the chancellor was correct in upholding that prayer. There is respectable authority to the contrary, but both upon principle and the weight of authority, we prefer the rule that where a mortgagee pays the taxes on the mortgaged property to preserve the title from forfeiture to the state or to an individual tax purchaser, the mortgagee will be subrogated to the lien of the state or municipality although the lien for the protection of which the mortgagee paid the taxes turns out to be an invalid lien. 25 R. C. L., pp. 1368, 1369; Childs v. Smith, 51 Wash. 457, 99 P. 304, 130 Am. St. Rep. 1107; Stoops v. Bank, 146 Ark. 127, 225 S. W. 593; Utah, etc., Ass'n v. Perkins, 53 Utah, 474, 173 P. 950; Gillette v. Oberholtzer, 45 Idaho, 571, 264 P. 229; Aultman Co. v. Jenkins, 19 Neb. 209, 27 N. W. 117; Goodnow v. Litchfield, 63 Iowa, 275, 19 N. W. 226; Litchfield v. Goodnow's Adm'r, 123 U. S. 549, 8 S. Ct. 210, 31 L. Ed. 199. It may be that in an exceptional case the rule of justice would not require the stated subrogation, but we do not think the facts here present an occasion for an exception.

Affirmed, and remanded.

### On Suggestion of Error.

**Griffith, J.,** delivered the opinion of the court on suggestion of error.

Upon the coming in of the suggestions of error, and upon examination of them, it was determined to remand this case to the docket for consideration and determination by the full court in banc. Upon such consideration the court has unanimously concluded that the original opinion published in 161 So. 864-867, is correct so far as concerns the first, second, and third points therein decided; and the majority has concluded that the fourth point dealt with in the original opinion also was correctly

decided and dealt with in that opinion, so that the said original opinion stands as written.

The point was raised in our consultations that to uphold and apply the doctrine of subrogation in respect to the taxes paid by appellant would be to allow appellant now to foreclose and sell said property under said tax lien, whereas the former remaindermen who had become the owners of the fee at the time of the tax sale and the payment of the taxes necessary to redeem, being infants at said time, would otherwise have had a period of two years beyond their coming of age in which to have redeemed and thereby to have paid all the taxes involved herein. It is true that as a general principle a party is not entitled to the right of subrogation in respect to the payment of taxes if to be used in such manner as to shorten the time within which the primary taxpayer otherwise could discharge the obligation, Love v. Robinson, 161 Miss. 585, 591, 137 So. 499, 78 A. L. R. 608, but at most that consideration as applied to this case would operate only (1) to postpone the time when the foreclosure of the tax lien held by appellant could take place, or (2) to require the foreclosure to carry the same privileges of redemption which the minors would have been able to exercise had the taxes not been paid, or (3) to require some other such arrangement in the decree as will preserve the equities of all parties in the respects mentioned. It would not affect the existence of the lien itself.

But these points were not decided by the chancellor, and evidently were not raised in the hearing of the demurrers before him, for it has not been mentioned either in the briefs or in the oral arguments before us. In affirming and remanding, we will leave entirely open for argument before the chancellor and for his conclusions and decree thereon the points mentioned under the foregoing numerals. He has not decided those points, and to attempt to pass on them here would be to review matters not decided by the chancellor, not necessarily

involved in what he did decide, and not raised or argued by any of the parties.

Affirmed and remanded.

**Ethridge, J.,** delivered a dissenting opinion on suggestion of error.

In this case the life estate had terminated by the death of the life tenant before the payment of taxes by the mortgagee of the life tenant. Consequently, the mortgagee had no further interest in the property; was a stranger so far as the taxes were concerned; and was a pure volunteer, having no interest to protect or duty to perform with reference to the estate.

It is well settled that a person who volunteers to pay the taxes for another has no rights against the property taxed or its owner.

It is true the bank may have thought it was paying the taxes to protect the fee, but it had notice of the exact estate of the mortgagor in its chain of title, and is charged with all that appears therein and all that reasonable inquiry would disclose.

The case of Griffing v. Pintard, 25 Miss. 173, clearly shows that there is no subrogation in favor of one who pays the taxes for another.

I think the judgment should be reversed and the bill dismissed in this case.

**McGowen, J.,** and **Smith, C. J.,** concur in this dissent.