FEDERAL LAND BANK OF NEW ORLEANS *v.* MILES *et al.*

(Division B. Jan. 22, 1934.)

[152 So. 472. No. 31003.]

**U. B. Parker,** of Wiggins, for appellant.

**Buren Broadus,** of Wiggins, for appellees.

Argued orally by **U. B. Parker,** for appellant.

**Ethridge, P. J.,** delivered the opinion of the court.

The appellee T. L. Miles filed an application with the Federal Land Bank of New Orleans for a loan of eight hundred dollars to be secured by a deed of trust on two hundred acres of land in Stone county owned by T. L. Miles, specifically described in the application. The purpose for which the loan was procured, as set forth in the application, was to purchase wire fencing, three hundred fifty dollars; for clearing land, one hundred ten dollars; to pay existing debt to Stone county for general improvements, three hundred dollars; to pay for stock in National Farm Loan Association, forty dollars—making a total of eight hundred dollars. T. L. Miles represented in the application that the value of permanent improvements on the land was made up as follows: Main dwelling, frame, five hundred dollars; other dwelling, frame, two hundred dollars; main barn, frame, three hundred dollars; other barn, frame, two hundred dollars; cultivated land forty dollars per acre, fourteen acres, five hundred sixty dollars; cultivable land twenty dollars per acre, ninety acres, one thousand eight hundred dollars; and ninety-six acres of pasture land at ten dollars per acre, three hundred twenty dollars. It was also represented in the application that the principal business of T. L. Miles was farming, and that he actually resided on the lands described with his family, consisting of his wife and two children.

The loan was approved by the loan committee of the Royal National Farm Association, of which T. L. Miles, as a condition of obtaining a loan, became a member. The Federal Land Bank had the property appraised by its appraiser, and the abstract of title to the land was approved by its attorneys. The Federal Land Bank, as a condition for the loan, required Miles to secure insurance upon the buildings described in the application in the sum of five hundred dollars, which Miles, at first, re-

fused to do and the loan was rejected. Afterwards, however, he applied to be reinstated, agreeing to carry insurance, and actually securing such insurance in the sum of five hundred dollars.

The loan was made in 1922, and the deed of trust in favor of Stone county, amounting to three hundred twenty-one dollars, was paid off out of the proceeds of the loan.

About 1931, Miles became in default in his payments and the deed of trust was foreclosed, and the Federal Land Bank became the purchaser at the sale; but the lands did not bring enough to pay its debt. After this foreclosure, agents of the Federal Land Bank went to the premises occupied by Miles and his family for the purpose of securing possession of the land and the buildings thereon, and were informed by Miles that the residence and other buildings were not on the land described in the application and deed of trust, and Miles refused to surrender possession of the buildings. Thereupon, the Federal Land Bank filed this suit, setting up that the loan was made upon the faith that the buildings were upon the land described in the deed of trust, but that, through error and mistake, the application and deed of trust omitted the south half of the southwest quarter of the southwest quarter of section 17, township 2 south, range 9 west, and that this property was pointed out to the appraisers as being the property embraced in the deed of trust, and that the loan application described the lands as being occupied as a home by T. L. Miles and family. It was shown that the buildings were in the same place as they were when the application was made, and in the same place that they were at the time the loan was procured from Stone county, which loan was paid off by the loan procured from the Federal Land Bank.

The bill prayed for a reformation of the Federal Land Bank's deed of trust so as to include the buildings, and

prayed in the alternative that if this could not be done, that it be subrogated to the rights of Stone county under the deed of trust given that county, and that as the deed of trust to Stone county also omitted the twenty acres last described, and as it was intended that deed of trust should contain this land, that it be reformed so as to contain said land, and that the land last described be sold to satisfy the amount, with interest, paid to Stone county.

It appeared from the testimony of T. L. Miles and his wife, Mrs. Florence Miles, that they did not represent that the buildings were upon the lands actually embraced in the application for the loan and in the deed of trust to the Federal Land Bank.

As to this, there was sharp dispute in the testimony. It is established that Miles and family lived upon the land as a homestead at the time the deed of trust was given to the Federal Land Bank, and that Mrs. Florence Miles did not sign the application for the deed of trust, and did not make any representations, according to her testimony, in reference thereto, and did not know that the parties who were inspecting the premises were inspecting it with a view of having it included in the deed of trust.

Both T. L. Miles and Mrs. Florence Miles admitted that they intended to embrace the twenty acres upon which the buildings are situated in the deed of trust given to Stone county, and that they thought, at the time, they were giving a deed of trust upon the twenty acres containing the buildings to Stone county; and the fact that it was so intended when the deed of trust was given to Stone county is clearly established by other evidence as well as by T. L. Miles and his wife.

The chancellor declined to grant the relief prayed for, and dismissed the bill, from which this appeal is prosecuted.

We do not think the deed of trust given to the Federal

Land Bank of New Orleans, under the evidence, could be reformed so as to include the omitted land which was occupied as a homestead. The husband, by his own act alone, cannot dispose of a homestead. In order for a deed of trust, or deed, to be valid as to a homestead, it must be signed by the wife as well as the husband. Consequently, the deed of trust given to the Federal Land Bank of New Orleans could not be reformed so as to embrace the twenty acres containing the homestead, although it was represented by the husband that the house and buildings were upon the land embraced in the deed of trust.

But, we think that the Federal Land Bank was entitled to be subrogated to the rights of Stone county under its deed of trust to the amount that the Federal Land Bank paid Stone county out of the money loaned to T. L. Miles, in discharging Stone county's deed of trust. It was absolutely necessary that this deed of trust be discharged for the Federal Land Bank to get a first mortgage, and we do not think that this right of the Federal Land Bank is barred either by laches or limitation.

It is clear that the Federal Land Bank acted upon the belief, and was warranted in believing, that the buildings were upon the land described in its deed of trust.

The Federal Land Bank is also entitled to recover interest upon the sum paid at five and one-half per cent.; and in order that the relief prayed for may be granted to this extent, it will be necessary to set aside the foreclosure of the Federal Land Bank and have all the lands embraced in the deed of trust to Stone county charged with three hundred twenty-one dollars and interest and the amount apportioned pro rata with the other lands and the homestead. It will be necessary to have the said amount fairly prorated according to the value of all the lands embraced in the Stone county deed of trust outside of the twenty acres on which the buildings are, as com-

pared with the value of the twenty acres and the improvements. We think this can be done and that the lands embraced in the Stone county deed of trust be advertised and sold, and a proper proportion made. The lands actually conveyed to the Federal Land Bank will also be charged with the debt made with the Federal Land Bank.

On a remand of the cause, the chancery court may enter the proper order for this purpose.

The judgment of the court below will, therefore, be reversed, and the cause remanded to be proceeded with in accordance with the principles of this opinion.

Reversed and remanded.