Box *et al. v.* EARLY.

(Division A.   Feb. 14, 1938.)

[178 So. 793.   No. 33036.]

Ely B. Mitchell, of Corinth, for appellants.

22

26

Chester L. Sumners, of Corinth, for appellee.

Argued orally by **Ely B. Mitchell**, for appellant, and by **Chester L. Sumners**, for appellee.

**McGehee, J.,** delivered the opinion of the court.

The question here involved requires a consideration of the equitable principle of subrogation and its proper application to the facts of this particular case. On March 17, 1930, the appellant V. M. Box, purchased a tract of land in Alcorn county from one J. W. Coleman, for which he paid $400 in cash and executed a promissory note in the sum of $2,350, secured by a deed of trust on the land, due December 17, 1930, both of which instruments were also signed by the appellant Mrs. V. M. Box, and were to secure the payment of the balance of the purchase price. This note was payable to J. W. Coleman, or bearer, and was therefore negotiable by delivery, but the same was duly endorsed by J. W. Coleman, as appears from the testimony and from the back of the note itself, and deposited by him with the First National Bank of Corinth, Miss., together with the deed of trust, as collateral security to an indebtedness owing by him to the bank in excess of the sum of $8500.

Shortly prior to November 10, 1930, according to the testimony of the then president of the bank, arrangements were made by J. W. Coleman with the bank to take over the Box note and to credit his indebtedness to the bank with the sum of $2200, which was the balance then due on the Box note, and with the understanding that a new note for this amount should be taken from V. M. Box and wife in favor of the bank, on which J. W. Coleman would become endorser. It was contended by the appellant V. M. Box, however, that he arranged for the $2200 loan from the bank by agreeing to pledge as security therefor two policies of life insurance in the sum of $1000 each, one of which was issued in 1925 and the other in October, 1930, and that the note was to be endorsed by J. W. Coleman in accordance with an agree-

ment with the bank in that behalf. At any rate, all the parties met at the bank on November 10, 1930, evidently pursuant to a general agreement among them, when V. M. Box and wife signed the note for $2200 in favor of the bank, and V. M. Box signed the deed of trust, which the answer of both appellants admits was drawn up and prepared to be signed by them to secure the payment of the said indebtedness, but which, for some reason, was not called to the attention of Mrs. Box at the time she signed the note. This note was thereupon duly endorsed by J. W. Coleman, and the proceeds of the loan were credited on his indebtedness, instead of being deposited as customarily done to the account of the makers of the note, and the said V. M. Box was charged on the loan ledger with that amount. Thereupon the bank surrendered the original note of $2350 and the deed of trust given by Box and wife to J. W. Coleman, and the deed of trust was then canceled and satisfied of record at the request of the said J. W. Coleman.

Under this state of fact it is contended by the appellants that the surrender to them of this $2350 note and the cancellation of the deed of trust, whereby the same had been secured, had the effect of extinguishing the vendor's lien, and that, since the land constituted their homestead, and the new deed of trust had not been signed by Mrs. Box, the bank was left without remedy to force the collection of the $2200 note given by them to the bank, as against the land.

In view of the position so taken by the appellants, this suit was brought in the chancery court of Alcorn county by the appellee, Thomas A. Early, receiver of the First National Bank of Corinth, Miss., on this note for $2200, alleging substantially the foregoing facts, except as to who arranged for the $2200 loan, and further alleging that there was a balance of $1,726.51, plus 8 per cent. interest from date, and a reasonable attorney's fee, due on the note; and, in addition to its prayer for general relief and for a determination of the rights of

the appellee under the notes given both to J. W. Coleman and to the bank, respectively, the bill specifically asked for a personal decree against the appellants for the amount still due and unpaid, and for a sale of the land in question to satisfy this indebtedness as representing the balance of the purchase price of the land under a vendor's lien therefor. The court below so held and decreed, and from this decree appellants have prosecuted this appeal.

Regardless of whether the court below would have been justified in declaring from a technical standpoint that the bank continued to hold the vendor's lien on the land, as formerly evidenced by the note and deed of trust given by the appellants to J. W. Coleman, and which had been with the consent of the bank surrendered and canceled, there is presented for our decision the right of the appellee receiver to be subrogated to the rights formerly held by J. W. Coleman under the facts stated, and the prayer of the bill for general relief. In this connection it should be observed that the record shows without conflict that the $2200 loan made by the bank to the appellants on the endorsement of J. W. Coleman was not a loan that could be used by the appellants for any and all purposes at their will and pleasure, but was made for the specific purpose of being applied on the purchase price of the land and pursuant to an agreement, express or implied, that the bank was to hold a lien of equal dignity and position with that represented by the original note and deed of trust. On 'this point the appellant V. M. Box was asked whether it was the intention of the parties that his wife should sign the note and deed of trust to the bank, and he replied: ''I suppose it was.'' And, when asked why she didn't sign it, he replied: ''I don't know why, they didn't—but she didn't.'' Mrs. Box testified that she did not refuse to sign the new deed of trust, and the effect of her testimony is that it was just not called to her attention.

We think that the chancellor was warranted in finding

that it was the intention of all the parties that the bank should retain a lien on the land when the original note and deed of trust were surrendered for cancellation. Mrs. Box admitted that she signed the new note at the bank, and the proof shows that the deed of trust was prepared for the joint signature of the appellants, and there is no good reason that can be assigned as to why the bank should have been willing to release the land merely on the security of the new note and policies of insurance which had but little cash surrender value compared to the amount of the indebtedness, and on the security of J. W. Coleman's endorsement, since he was already liable to the bank for the same amount of the total indebtedness represented by this new note and the balance of his own account that existed after the $2200 had been credited thereon.

Under the facts shown by the record, the bank was not a mere volunteer in the transaction. It advanced the remainder of the purchase price on the land at the instance of both the vendor and the vendee and had an interest in getting the indebtedness of J. W. Coleman reduced at the bank and also an interest of its own to protect in its agreement for security on the land for the repayment of the purchase price advanced at the instance of the parties, and on which the vendor remained liable. If Coleman had been compelled to pay this $2200 note to the bank, then his right to have the original purchase-money deed of trust revived in equity for his benefit would not be questioned, since this amount of the purchase money on the land has never been paid by the appellants, and until when no homestead rights should exist in their favor against the vendor or his equitable assignee. Cansler v. Sallis, 54 Miss. 446. In other words, a mere change in the indebtedness would not have discharged the lien unless Coleman, in endorsing the new note from the vendee to the bank, clearly intended to release the land from all encumbrances as to the purchase money then due thereon. And, as long as Cole-

man remains liable on this note to the bank, the purchase money has not been paid by the vendees to any one, and, as long as this $2200 remains unpaid by the vendees, no homestead rights can exist. Jarvis v. Armstrong et al., 94 Miss. 145, 48 So. 1.

Sections 505 and 2853, Code of 1930, the latter of which is relied on by the appellants as requiring a vendor's lien for the purchase money of land to be assigned in writing to enable the transferee to enforce the lien, are not applicable to suits in equity to enforce the right of subrogation; but, even if this were not so, section 2853 would enable the bank as holder of the original negotiable promissory note of $2350, given by the appellants to J. W. Coleman, and which was both endorsed in writing and delivered by him to the bank, to enforce the rights of an assignee, including the lien securing the same, since the remaining portion of that section does not limit or qualify the first sentence thereof dealing with the assignment of a promissory note when assigned in the manner provided for in the chapter on negotiable instruments, of which said section is a part.

Neither does the presumption that a lien secured by a deed of trust is extinguished by the cancellation thereof on the record, nor the presumption of payment that arises from the possession by the makers of a note and deed of trust given to evidence a purchase money or other lien, prevent a court of equity from reviving and enforcing the lien, where there are no intervening equities, when necessary to do so in order that right and justice may prevail. When we look through the form and to the substance of the transaction whereby the original note and deed of trust were canceled and the new note and deed of trust taken, it is clear that the real consideration of the latter was the balance of the purchase price of the land then remaining unpaid.

Nor is the right of subrogation in the present case denied under the authority of the case of Welch v. Thigpen, 172 Miss. 5, 159 So. 101, for the reason that the

court in that case expressly stated that there was no pre-existing lien which had been theretofore transferred to Welch when he advanced the money to the vendee to pay the purchase price of the land, whereas in the case at bar the bank was the holder of a pre-existing purchase-money lien on the land at the time it advanced the $2200 in question.

In the case of Louisiana National Bank v. Knapp, 61 Miss. 485, it was held that, where by contract it is agreed that payment of the purchase money shall be made to another, such other becomes the payee of the purchase price and shall have a lien on the land sold just as the vendor would have had. In Good v. Golden, 73 Miss. 91, 19 So. 100, 55 Am. St. Rep. 486, the principle was announced that one who at the request of the debtor discharges part of a debt for the security of which the creditor holds a deed of trust on the land of the debtor is not entitled to be subrogated to the rights of the creditor as the beneficiary of the encumbrances, except where there is an agreement to that effect, either express or reasonably inferable from the facts. We think that the case at bar comes within this exception.

In Union Mortgage, Banking & Trust Co. v. Peters, 72 Miss. 1058, 18 So. 497, 30 L. R. A. 829, the court held that one who, on the security of a mortgage, and at the instance of the debtor, advances money to be used in the payment of a prior encumbrance on the mortgaged property, is not a volunteer or intermeddler in the debtor's affairs within the rule denying to such a one the benefit of subrogation. In Spence et al. v. Clarke, 152 Miss. 542, 120 So. 195, where a mortgage was executed expressly to raise money to discharge a prior encumbrance with the understanding that the mortgage so executed was to be of equal dignity to that of the prior encumbrance, and the money was so applied, it was held that the mortgagee became entitled to be subrogated to the rights of the prior encumbrancer, where subrogation was necessary for better security of the mortgage debt.

The doctrine of subrogation is one of equity; its object is the prevention of injustice; it rests upon the principle of natural equity; and its basis is the doing of complete and essential justice between the parties without regard to form. Prestridge v. Lazar, 132 Miss. 168, 95 So. 837. In Federal Land Bank v. Miles et al., 169 Miss. 43, 152 So. 472, where the proceeds of a loan secured by a deed of trust were used in part to pay the lien of Stone county on certain land for general improvements, but where a part of such property was not embraced within the deed of trust securing the loan, and the mortgagee understood that the same would be included therein, the mortgagee was held subrogated to the rights of the county to the extent of the proceeds of the loan used to pay the county's lien, notwithstanding that the particular land was a part of the homestead and was not understood or intended by the wife to be included in the mortgage.

In 25 R. C. L., p. 1343, it is said: "It is well settled that where the security given for the loan which is used to pay off an incumbrance turns out to be void, although the person taking it expected to get good security, he will be subrogated to the rights of the holder of the lien which the money advanced is used to pay; and that in such case the person advancing the money cannot be regarded as a stranger or volunteer, there being no intervening equity to prevent. The rule has been applied where the security fails because of partial or total want of title in the person giving it, and also where it fails of its purpose because of some defect in its execution, or because of want of authority or capacity in the person executing it."

The foregoing rule was followed in the case of Russell v. Grisham, 177 Miss. 435, 170 So. 900, where it was held that one who on security of a mortgage advances money at the instance of the owner of the mortgaged land to discharge a lien on the land is not a "volunteer" within the rule denying him benefit of subrogation, notwith-

standing that the lien has been paid and that the security given is ineffective because of defects therein. In that case the mortgage taken by the lendor was void because of the invalidity of the proceeding whereby the disabilities of minority were removed from the minors who signed the same. To the same effect are Ligon v. Barton, 88 Miss. 135, 40 So. 555, and Robinson v. Sullivan et al., 102 Miss. 581, 59 So. 846.

In the case of Bell v. Bell, 174 Ala. 446, 56 So. 926, it was held that one who advances money to pay the purchase price of real estate, under an agreement that he shall be secured by a mortgage, is entitled to subrogation to the vendor's lien as against the rights of the wife of the vendee, who did not comply with the statutory requirements in executing the mortgage so as to join her interests therein, and to the extent of such lien the mortgage may be enforced. This case is also reported in 37 L. R. A. (N. S.), 1203, where there is an elaborate note reviewing many decisions which sustain our conclusion in the case at bar. And in the case of Love v. Robinson, 161 Miss. 585, 137 So. 499, 500, 78 A. L. R. 608, the court, in discussing the doctrine of subrogation, said: ''The broad general principles governing the doctrine of subrogation are well settled and are liberally upheld in this jurisdiction; but in all the statements of the doctrine there is the exception that a mere volunteer is never entitled to relief. . . . The problem, therefore, in many cases, is to determine whether the person claiming the benefit of subrogation is or is not a volunteer. There is no difficulty in excluding as a volunteer one who is an intermeddler, who has nothing to do with the transaction, or who officiously intrudes himself without public or private invitation into a matter which, to use a common expression, is none of his business.'' And to the same effect is the holding in the case of Russell v. Grisham, supra, where it was also stated that the fact that the lien to which subrogation is sought was intended to be and was paid is immaterial.

We do not think that the cases of Berry v. Bullock, 81 Miss. 463, 33 So. 410, and Lunceford et al. v. Hardin, 124 Miss. 48, 86 So. 710, are applicable to the facts in the present case, for the reason that the court expressly held in Berry v. Bullock that the person advancing the purchase money was a pure volunteer, and in the case of Lunceford v. Hardin the right of subrogation was not asserted under the pleadings nor discussed by the court, whereas in the case at bar the right of subrogation is alleged in appellee's answer to the cross-bill, and appropriate relief under the case as made warrants subrogation under the prayer of the bill of complaint for general relief. The granting of such relief to the appellee requires no more of the appellants than that they pay for the land, as they agreed to do, if they desire to hold and enjoy it as a homestead. And this is right.

Affirmed.