ROBERTSON *v.* FIRST NATIONAL BANK
OF BILOXI, MISSISSIPPI

No. 42071 March 12, 1962 138 So. 2d 719

*C. W. Ford,* Pascagoula, for appellant.

*Thomas L. Wallace, Edward C. Tonsmeire, Jr.,* Biloxi, for appellee.

KYLE, J.

This case is before us on appeal by Walter Burke Robertson, defendant in the court below, from a decree of the Chancery Court of Jackson County rendered in favor of the First National Bank of Biloxi, complainant in the court below, in a suit filed by the complainant against W. J. Ditsworth and Walter Burke Robertson, and Vertis Ramsey, Trustee, defendants, for the recovery of a money judgment on a promissory note executed by W. J. Ditsworth and payable to the First National Bank of Biloxi, and the establishment of an equitable lien on Ditworth's interest in certain land

situated in the International Shipbuilding Company Subdivision of the City of Pascagoula, which had been conveyed by the defendant Ditsworth and his wife to the defendant Robertson by warranty deed dated May 20, 1959.

The original bill of complaint was filed by the First National Bank of Biloxi against the above named defendants on May 25, 1960. The defendant, Walter Burke Robertson, filed his answer on July 27, 1960. The complainant thereupon filed a motion to strike the defendant's answer on the ground that the answer was insufficient in law to constitute a defense to the bill of complaint. The defendant, on September 2, 1960, filed a motion for judgment on the pleadings. On September 23, 1960, the court entered an order overruling the complainant's motion for a judgment on the pleadings, and in the same order sustained a motion of the defendant Robertson for permission to file an amended answer. The defendant Robertson filed his amended answer, and a few days later the attorneys for the complainant and the defendant Robertson agreed that the complainant might file an amended bill of complaint, and that the defendant should have until December 1, 1960, for filing an answer.

For a proper understanding of the issues presented for the chancellor's decision and the findings of facts and conclusion of law upon which his decision is based, it is necessary that we set forth at the outset the material facts alleged by the complainant in its amended bill as grounds for the relief prayed for.

In its amended bill of complaint the complainant alleged that prior to July 14, 1958, the defendant W. F. Ditsworth represented and warranted to the complainant that he owned certain lots described therein, situated in Block "T", International Shipbuilding Subdivision, in the City of Pascagoula, Jackson County, Mississippi, and also Lots 13 and 14 in Block "Y", International

Shipbuilding Subdivision in the City of Pascagoula; that the defendant Ditsworth was engaged in the business of general contractor, and that on or about July 14, 1958, the defendant Ditsworth made application to the complainant for a construction loan to build two dwelling houses, one on the first and second parcels of land described in paragraph 2 of the bill of complaint, and another on the third parcel of land described in said paragraph 2; that the defendant Ditsworth had FHA commitments for permanent loans on the two houses to be constructed; and that the complainant agreed to lend the defendant Ditsworth $20,000 to be used by him in the construction of said houses, said loan to be secured by a first mortgage deed of trust on the land described in the bill of complaint; that the sum of $10,000 was to be advanced immediately to be used in the construction of the first house, and when said house had been completed an additional $10,000 was to be advanced to complete the second house. The complainant further alleged that the defendant Ditsworth executed his promissory note for the sum of $10,000, dated July 14, 1958, payable to the complainant ninety days after date, and bearing interest at the rate of six per cent per annum; that the defendant Ditsworth executed a deed of trust conveying the above described tract of land to Vertis Ramsey, trustee, as security for the payment of said indebtedness, and as security for such additional advances, as the complainant might make to the defendant thereafter, not to exceed $125,000; that the defendant Ditsworth received the $10,000 from the complainant, and with the proceeds of said loan constructed a dwelling house on the third parcel of land described in the deed of trust; that the defendant Ditsworth sold said property on or about November 7, 1958, and on or about November 13, 1958, paid to the complainant the amount of said collateral note, and the note was surrendered to him. The complainant further al-

leged that at the time the above mentioned indebtedness was paid the defendant Ditsworth asked the complainant's assistant cashier, A. H. Kruse, for a release of the deed of trust, but was advised by the assistant cashier that the complainant was obligated to furnish him an additional $10,000 for the construction of the second house; that the defendant Ditsworth stated that unless the deed of trust was released, he would not be able to close his sale of the first house, that he would need the additional $10,000 in a few days and would execute a note and deed of trust on the remaining property when he obtained the money; and that the assistant cashier thereupon executed a release presented to him by Ditsworth, with the understanding that when the defendant Ditsworth wished to draw the additional $10,-000, a new note and deed of trust would be executed by the defendant Ditsworth.

The complainant further alleged that on or about November 20, 1958, the defendant Ditsworth called at the complainant's offices and advised A. L. Gottsche, President of the complainant bank, that he was ready to start construction of the dwelling house on the first two parcels of land described in the above mentioned deed of trust, and that he was ready to draw his second $10,000; that Gottsche, through mistake, inadvertence and error, believing that the deed of trust was still in force and effect as to the first two parcels of land described therein, had the defendant execute a collateral form note payable to the complainant ninety days after date; and the sum of $10,000 was placed to the defendant Ditsworth's account; that it was the belief of both the complainant and the defendant Ditsworth that said transaction had resulted in the creation of a first deed of trust lien on the above mentioned land in favor of the complainant, and when the complainant discovered that the original deed of trust had been released a new note and deed of trust covering the first and second parcels

of land referred to above were prepared and forwarded to the defendant Ditsworth with a request that they be executed and returned to the complainant; that said note and deed of trust, however, were never returned to the complainant. The complainant further alleged that the defendant Ditsworth received the second $10,-000 and with the proceeds of said loan constructed a dwelling house on the first two parcels of land described in said deed of trust, the entire sum being spent for materials and labor used in the construction of said house; that said note fell due on February 18, 1959, and was renewed by the execution of a new note due ninety days after date, upon the payment of interest due in the amount of $149.60.

The complainant further alleged that the defendant Ditsworth became involved in financial difficulties and was unable to pay all of his debts, including indebtedness owing by him to the defendant Walter Burke Robertson; that the defendant Ditsworth informed Robertson of his financial difficulties including his indebtedness to the complainant and the fact that said indebtedness was secured by a first deed of trust to the bank; that the defendant Ditsworth prevailed upon Robertson to accept title to the first two parcels of land described in the above mentioned deed of trust, upon which the second dwelling house had then been completed, together with other land owned by the defendant Ditsworth in the same subdivision. The complainant was advised and believed that Robertson agreed to accept in satisfaction or partial satisfaction of Ditsworth's indebtedness to him the conveyance of all of the land in said subdivision owned by Ditsworth, and to pay to the complainant bank the sum of $10,000 owned by Ditsworth to the complainant bank, and that by warranty deed dated May 20, 1959, the defendant Ditsworth conveyed to Robertson the land described in said warranty deed, which included the land upon which the above mentioned

house was located. The complainant charged that the defendant Robertson was a purchaser of the above described land with actual notice of the complainant's lien against the first two parcels of land described in paragraph 2 of the bill of complaint, and that part of the consideration for the conveyance was Robertson's assumption of an agreement to pay in full Ditsworth's indebtedness to the complainant; that Robertson acknowledged said indebtedness on at least two occasions and the complainant at the specific request of Robertson extended the due date of the indebtedness; that said indebtedness became due and payable on November 19, 1959, and both the defendants, Ditsworth and Robertson, had refused to pay the same.

The bill further alleged that complainant was entitled to judgment against the defendants, Ditsworth and Robertson, in the amount of $11,836.84, and that the complainant was entitled to have the deed of trust dated November 20, 1958, which had been executed by the defendant Ditsworth but not recorded, declared a first deed of trust on the land described therein, and to have an equitable mortgage on said land declared in its favor as further security for said indebtedness, and to have the same foreclosed for the payment of said indebtedness. Complainant asked for the specific relief prayed for and for general relief.

The defendant Robertson filed his answer to the amended bill of complaint on December 2, 1960. In his answer the defendant Robertson admitted that the defendant Ditsworth had made application to the complainant for a loan on July 14, 1958, but denied that such application was for a loan to build two dwelling houses; and the defendant denied that the complainant agreed to lend to Ditsworth $20,000 to be used in the construction of two houses. The defendant averred that Ditsworth had built one house and had paid in full to the complainant the sum of $10,000 which he had bor-

rowed from the complainant on July 14, 1958. The defendant denied that there was any understanding between Ditsworth and Kruse that when Ditsworth wished to draw the additional $10,000 a new note and deed of trust would be executed by Ditsworth, but admitted that Ditsworth understood that he would be able to obtain another loan of $10,000 from the complainant when he was ready to build another house. The defendant admitted that a new note and deed of trust was prepared and forwarded to the defendant Ditsworth, but denied that said new note and deed of trust covered the first and second parcels of land described in paragraph 2 of the bill of complaint. The defendant admitted that Ditsworth signed the note and the deed of trust, but averred that Ditsworth never delivered to the complainant the note or deed of trust. The defendant admitted that Ditsworth received the $10,000 from the complainant on November 20, 1958, and that the entire sum was spent for materials and labor used in the construction of said house. The defendant admitted that Ditsworth got into financial difficulties, and that the defendant Ditsworth advised the defendant Robertson of his financial difficulties, including the indebtedness to the complainant; but the defendant denied that Ditsworth advised him of the fact that the indebtedness was secured by a first deed of trust to the complainant, or that he agreed to accept in satisfaction or partial satisfaction of Ditsworth's indebtedness to him a conveyance of the property conveyed to him by Ditsworth and to pay the complainant the sum of $10,000 owed by Ditsworth to the complainant bank; or that he was obligated to pay the indebtedness owed by Ditsworth to the complainant bank, or that said indebtedness was secured by any existing deed of trust or equitable mortgage.

Having answered the amended bill of complainant, the defendant Robertson, by way of further and affirmative defenses, alleged the following: That on July 14,

1958, W. J. Ditsworth and his wife, Annie M. Ditsworth, owned the property described in the amended bill .of complaint, as joint tennants with the right of survivorship; that on May 20, 1959, the defendant Ditsworth and his wife, Annie Ditsworth, conveyed to the defendant Robertson the lands in Block T of the above mentioned subdivision, which were the same lands as described in Items 1 and 2 of the above mentioned deed of trust; and the complainant knew at the time it loaned the defendant Ditsworth the second $10,000, that it had executed a complete cancellation of its deed of trust on the Ditsworth property. The defendant further alleged in his answer that he had at no time agreed, in writing or orally, with the defendant Ditsworth or the complainant, that he would assume the indebtedness owed by Ditsworth to the complainant. The defendant then pleaded specifically the Statute of Frauds, (Sec. 264, Mississippi Code of 1942, Rec.), as a defense to the complainant's suit, and also Code Sections 264, 269, 873, and 876, Mississippi Code of 1942, as amended.

The defendant W. F. Ditsworth filed a separate answer to the amended bill of complaint. In his answer the defendant Ditsworth admitted that he made application to the complainant bank on July 14, 1958, for a construction loan, and that he obtained a loan for $10,000 on that date and executed a note for that amount and a deed of trust to secure the payment of same; and the defendant admitted that the deed of trust contained a provision that it should stand as security for such future and additional advances as the complainant bank might make to him not to exceed $125,000. The defendant, however, denied that the complainant bank agreed, at the time he executed the deed of trust, that the complainant would lend him $20,000 to be used in the construction of two houses. The defendant stated in his answer that the above mentioned note for $10,000 was paid on November 13, 1958, and that the note was

surrendered to him, with a complete cancellation of the deed of trust. The defendant denied that he stated to the assistant cashier at that time that he would need an additional $10,000 within a few days, and that he would execute a note and deed of trust on the remaining property when he obtained the money. The defendant stated, however, that he advised Mr. Kruse that he wanted to build another house and when he was ready to do so he would be back to see the complainant bank for another loan; and the defendant stated that he understood that he would be able to obtain another loan of $10,000 from the complainant bank when he was ready to build another house. The defendant admitted that he borrowed the second $10,000 from the complainant bank on November 20, 1958, and that a new note and deed of trust were prepared and forwarded to him with a request that they be executed and returned to the complainant bank, and the defendant admitted that he signed the note and deed of trust; but he stated that the note and deed of trust were never delivered to the complainant bank. The defendant admitted that the second $10,000 was used by him to pay for the construction of the second house, and that he executed a renewal note for the $10,000 on February 18, 1959.

The defendant Ditsworth denied that he informed the defendant Robertson that the indebtedness which he owed to the complainant bank was secured by a deed of trust on the first and second parcels of land described in paragraph 2 of the bill of complaint; and the defendant denied that part of the consideration of his conveyance of the land to Robertson was the assumption by Robertson of his indebtedness to the complainant. The defendant admitted that the complainant was entitled to a judgment against him, but denied that the complainant was entitled to a judgment against the defendant Robertson.

The case was tried at the December 1960 term of the court. Four witnesses were called to testify on behalf of the respective parties. A. L. Gottsche, President of the complainant bank, and Alfred Kruse, assistant cashier, testified as witnesses on behalf of the complainant. The defendants, Walter Burke Robertson and W. J. Ditsworth were called to testify as adverse witnesses by the complainant. Robertson testified that the attorney who was representing him during the trial was his attorney on May 20, 1959, the date on which Ditsworth and his wife executed the deed of conveyance to him of the property in controversy. Ditsworth was interrogated at length by the complainant's attorney, and was later recalled to testify as a witness on his own behalf. It is not necessary that we undertake to summarize the testimony of the witnesses. There is in fact but little conflict in the testimony. At the conclusion of the hearing the chancellor dictated into the record his findings of fact and his conclusions of law.

The chancellor found that in July 1958 Ditsworth went to the First National Bank of Biloxi and arranged for financing to build a series of houses in Pascagoula, and thereupon executed a deed of trust on a parcel of the land containing several lots and a note for $10,000, which, as understood by all parties, was to be used for the construction of the first house; that the bank following its usual procedure, as stated by its president, had Ditsworth execute a collateral note in envelope form for the $10,000, and also placed in the envelope, as collateral, the note and deed of trust executed by Ditsworth on the land; that, thereafter, on November 13, 1958, Ditsworth went to the bank and advised the bank that he had completed the first house and tendered to the bank, in cash or a cash credit on the bank in Pascagoula, the amount of principal and interest due on the $10,000 note which he owed the bank at that time; that Ditsworth had with him a release which had been pre-

pared in Pascagoula, and he asked Mr. Kruse, the assistant cashier in charge of the note department, to execute the release; that Kruse hesitated and stated that Ditsworth was to have only a partial release, since he was to build other houses; that Ditsworth advised Kruse that he had to obtain the release in order to get his loan (presumably from the FHA) closed; and that Kruse then executed the release and Ditsworth left the bank with the understanding that before he obtained additional money he would execute the additional deed of trust rather than be delayed about the partial release. The chancellor found that the release was later duly filed for record in the office of the Chancery Court Clerk at Pascagoula and was placed on the general index, but there was no notation made of it on the sectional index in said office.

The chancellor found that on November 20, 1958, Ditsworth went back to the bank, arrived there early in the morning, and asked Mr. Kruse where Mr. Gottsche was, and Mr. Kruse advised Ditsworth that Mr. Gottsche was out; that Ditsworth then asked Mr. Kruse to tell Mr. Gottsche that he would need an additional $10,000 to start the next house; and that during that day Ditsworth signed a note payable to the First National Bank of Biloxi for the sum of $10,000, and although neither Ditsworth nor Gottsche was clear in his testimony as to how or where the note was executed, the bank records showed that a note was executed on that date and registered in the note register; that when Kruse found that the second $10,000 had been advanced to Ditsworth, he immediately prepared a new note and deed of trust for the additional loan and sent it to Ditsworth to be executed in accordance with his agreement with the bank that as additional loans were made, the land described in the deed of trust would be used as security for the same; that the new note and deed of trust sent by Kruse were received by Ditsworth the following day,

and that Ditsworth, according to his intention and desire and purpose, and in keeping with his word, signed the note and deed of trust; that Ditsworth, however, noted that the description of the property conveyed in the deed of trust included the lot which had been sold, and he therefore left the deed of trust on his table and through oversight thereafter did not carry it back to the bank for the description to be corrected; but so far as Ditsworth was concerned thereafter he treated the bank as having a deed of trust on the property on which he was building the second house.

The chancellor found that the defendant Robertson, who was endorser on the bond of Ditsworth for the construction of a building for the Merchants and Marine Bank of Pascagoula, was informed by Ditsworth some-time in May 1959, that he could not complete the Mer-chants and Marine Bank contract and would have to call on Robertson to help him complete it under his bond; that Robertson did so, and being faced with the necessity of advancing money to Ditsworth to enable him to complete the contract, Robertson asked Ditsworth to convey to him all of the property that he had that could compensate him for the advances to be made to him. The chancellor found that Ditsworth then advised Robertson of his debts, including the debt due the First National Bank of Biloxi; and the chancellor found that Ditsworth informed Robertson and Robertson's attorney that there was a lien in favor of the First National Bank for $10,000 on the second house; and that Robert-son took his deed with full knowledge of that relation-ship between Ditsworth and the bank, and understanding that, when the lot was conveyed to him, only an equity over and above the indebtedness to the bank would be the property of Robertson. The chancellor found that Robertson was not an innocent purchaser for value, neither was he a creditor who had furnished credit upon the property, nor was he misled in any way, but

that he knew from the time he first became involved that Ditsworth owed the bank the above stated amount of money on the second house, and that the bank had a lien therefor. The chancellor therefore found that, as between the bank and Ditsworth, there was an equitable mortgage on the land described in the original deed of trust, "less that which was sold off to Lawhon," and that, since Robertson was not an innocent purchaser for value, the rights in the property which Robertson had acquired by the conveyance from Ditsworth were subject to the equitable mortgage of the bank. The chancellor found that Robertson acknowledged the above mentioned indebtedness and mortgage for several months after the property was acquired from Ditsworth; that Robertson, however, did not personally assume said indebtedness, and therefore could not be held personally liable for the indebtedness.

A decree was therefore entered in conformity with the findings of the chancellor, awarding judgment to the complainant against the defendant Ditsworth for $11,837.84, with interest thereon from May 25, 1960, and establishing an equitable lien on the interest of the defendant Ditsworth in the land described in the decree, together with the improvements thereon, and subordinating the title acquired by the defendant Robertson to the bank's equitable lien on the property, but denying the complainant's claim that the defendant Robertson was personally liable for the debt. The decree further provided that, in the event the judgment was not paid within thirty days, the complainant should be entitled to have said equitable lien foreclosed and the land sold in satisfaction thereof.

From that decree the defendant Walter Burke Robertson has prosecuted this appeal, and the complainant bank has filed a cross-assignment of errors.

The appellant Robertson has assigned and argued only two points as grounds for reversal of the decree

of the lower court: (1) That the court erred in admitting in evidence three letters written by the appellant's attorney on behalf of his client to the First National Bank of Biloxi, dated August 25, 1959, November 24, 1959, and January 20, 1960, concerning the W. J. Ditsworth indebtedness to the appellee bank; and (2) that the court erred in finding that the appellee bank had an equitable lien on the interest of the defendant Ditsworth in the property which Ditsworth and his wife had conveyed to the appellant Robertson.

The appellee and cross-appellant, First National Bank of Biloxi, in its cross-assignment of errors, contends that the court erred in its finding that the appellant Robertson was not personally liable for the indebtedness due the appellee bank.

We shall consider first the points assigned and argued on behalf of the appellant as grounds for reversal of the decree of the lower court on his direct appeal.

The record shows that the three letters referred to in the appellant's first assignment of errors were offered in evidence by the appellee after the appellant Robertson had testified that the attorney who was representing him during the trial was his attorney on May 20, 1959, the date on which Ditsworth and his wife executed the deed of conveyance to him of the property in controversy.

In the letter addressed to the appellee bank, dated August 25, 1959, the appellant's attorney stated: "It is agreeable with Mr. Walter Robertson, the present owner of the land on which you hold a deed of trust as security for the above referred to promissory note of W. J. Ditsworth, to renew the said note for an additional ninety days from May 19, 1959, to August 19, 1959." In the letter dated November 24, 1959, the writer again referred to the property as "the lands under the deed of trust given as security for the above referred to note," and the writer asked that the bank extend the payment of the note until a prospective sale of the

house situated thereon could be made. In the letter dated January 20, 1960, the writer stated that, as to the sale of the property referred to in his letter of November 24, the prospective buyer had been unable to obtain a loan on the property and the sale had fallen through, but the writer expected to give the bank some definite date in the near future at which ''we can settle this indebtedness.''

It is argued on behalf of the appellant that the above mentioned letters formed the basis of the appellee's claim that the appellant Robertson had notice of and assumed the payment of the indebtedness of the defendant Ditsworth to the appellee bank, and that the letters were inadmissible as evidence in the case for the reason that copies of the letters had not been attached to the appellee's pleadings as required by Sections 1469 and 1470, Mississippi Code of 1942.

But we think there is no merit in the appellant's contention that the above mentioned letters were inadmissible as evidence in the case for the reason that copies of the letters had not been attached to the amended bill of complaint, as required by Sections 1469 and 1470, Mississippi Code of 1942. The complainant's suit was not founded on the letters mentioned above. The letters were matters of evidence to show that Robertson had knowledge of Ditsworth's indebtedness to the complainant bank and that the bank had a mortgage lien or claim against the property at the time he purchased the property, and that Robertson was not an innocent purchaser for value without notice of the complainant's claim. The letters were properly admitted in evidence for that purpose. Enochs-Flowers, Ltd., et al. v. Bank of Forest, 172 Miss. 36, 157 So. 711; Blount v. Hair, 228 Miss. 898, 903, 90 So. 2d 5.

It is not necessary that we consider at this time the question whether the letters were competent evidence to show that Robertson assumed the payment of Dits-

worth's indebtedness to the bank, since the chancellor found that the appellant Robertson did not personally assume the payment of the indebtedness.

 ██ It is next argued that the court erred in its finding that the appellee bank was entitled to an equitable lien or mortgage on the interest of the defendant Ditsworth in the land described in the deed of trust executed by the defendant Ditsworth to the bank on July 14, 1958, less that part of same "which was sold off to Lawhon," and that Robertson had knowledge of the bank's lien or claim against the property when the property was conveyed to him. It is argued that this Court has held in several cases that an equitable mortgage on land must be founded on a written agreement, setting out the terms of the indebtedness and identifying the land; and that in this case there was no written agreement, and apparently no oral agreement, by the defendant Ditsworth and the appellee bank, which could serve as a basis for a determination of the description of the land on which such equitable lien was to be imposed; and the appellant cites in support of his argument on that point the case of Williams v. Stratton, 10 Smedes & M. 418, and Adams v. Johnson, 41 Miss. 258. But that argument in our opinion is refuted by the testimony of the bank officers and the testimony of Ditsworth himself.

A. L. Gottsche, president of the appellee bank, testified that Ditsworth had applied to the bank for loans to build two or more houses; and that the bank had agreed to lend him $10,000 per house, the loans to be made to Ditsworth as he finished one house and got started on another. The deed of trust which Ditsworth executed on July 14, 1958, expressly stated that it was given to secure the payment of the $10,000 note of that date, and that it also covered "such future and additional advances as may be made to the grantor." Gottsche testified that the second loan was made to Ditsworth under the

assumption that only a partial release of the above mentioned deed of trust had been executed at the time the first loan was paid; that he knew nothing of the full release at the time the second loan was made; that he had Ditsworth execute a collateral form note for the second $10,000, due ninety days after date; that the note for the second $10,000 was renewed at Ditsworth request by the execution of a new note on February 18, 1959; and that the original note was handed back to the borrower. Gottsche then identified the note dated February 18, 1959, and the note was offered in evidence. The renewal note, a copy of which was attached as an exhibit to the bill of complaint, contains the following recital: "This note is secured by pledge and delivery of the following securities, viz.: Mortgage note for $10,-000, dated July 14, 1958." Gottsche stated that the note and deed of trust dated July 14, 1958, had not been out of the possession of the bank since the second loan was made.

Kruse testified that he signed the release of the deed of trust dated July 14, 1958, at Ditsworth's insistence, with the understanding that if Ditsworth wanted to secure additional funds for the construction of other houses he would have to sign additional security therefor.

Ditsworth testified that, when he went to the bank on November 20, 1958, to arrange for the second loan he intended to execute a deed of trust; that he did not execute a deed of trust at that time because he didn't see the man that he went to see, but that was his intention, and he supposed it was the intention of the bank. Ditsworth said: "They had always used a deed of trust on things like that. * * * I had several transactions and they had all been secured by something or other." He was asked why he did not go and clear up the second paper with the bank. His answer was, "That was my intention to go back in the next few days and get it fixed * * * and I got busy at something

else * * * and I never did think about it, it didn't cross my mind any more.'' He was asked: ''As a matter of fact you always considered the bank had a deed of trust on that land, didn't you?'' His answer was, ''I thought they did.'' Ditsworth was asked whether or not he always considered the bank had a lien on the second house for the security of the money that went into it? His answer was, ''As long as I owed them, I owed them.'' He was then asked, ''When you went to see Mr. Robertson at Mr. Ford's office you so informed him did you not?'' His answer was, ''In a way, yes, I know I did. That is what I am trying to tell you now.''

It can be readily seen from Ditsworth's own testimony that Ditsworth understood, at the time he obtained the full release of the deed of trust dated July 14, 1958, that when he returned to the bank for a second loan he would be required to execute a new deed of trust on the same property as that described in the deed of trust which was being cancelled, less the lots upon which the first dwelling house had been constructed. It also seems clear to us that, when Ditsworth signed the renewal note for the second $10,000 on February 18, 1959, which recited that the note was secure by pledge and delivery of the ''securities'' mentioned therein, he intended and agreed that the bank should have a lien on the land described in the deed of trust given to secure the $10,-000 note dated July 14, 1958, not excluding, however, the lots on which the first dwelling house had been constructed, as security for the payment of the indebtedness evidenced by the renewal note. Although the language used in the renewal note in describing the security was inapt, the only reasonable conclusion that could be drawn from the recital in the note was that the note was secured by a lien on the land described in the original deed of trust, which was still in the possession of the bank, less the lots upon which the first dwelling

house had been constructed. The recital in the note, in our opinion, was sufficient to identify the property pledged as security for the payment of the debt.

 ■ It may be argued of course that Kruse was negligent in failing to follow up the letter which he had written to Ditsworth at the close of the days business on November 20, 1958, requesting him to execute the new note and deed of trust mailed to him on that date. But Kruse's negligence in failing to exercise due diligence in having Ditsworth execute the new note and deed of trust of itself was not sufficient to create an estoppel against the bank in favor of Ditsworth or in favor of Robertson, who was not a bona fide purchaser of the property without notice of the bank's equitable lien.

 ■ It is not every act of negligence that will stay the hand of the court. Even a clearly established negligence may not of itself be a sufficient ground for refusing relief, if it appears that the other party has not been prejudiced thereby. Pomeroy's Equity Jurisprudence, Vol. 3, Fifth Edition, pp. 340, 341, Section 856b, and cases cited.

 ■ The courts have generally held that the abrogation of a release or discharge and the reinstatement of the mortgage may be had when the mortgagee shows some special equity. See 59 C.J.S. p. 754, Mortgages, Section 476b, and cases cited. ■ A lien created by contract, and not sufficient as a legal mortgage, will generally be regarded in the nature of an equitable mortgage. The form of the contract is immaterial. In Re Assignment of Snyder, 138 Iowa 553, 114 N. W. 615, 616, 19 L.R.A. (N. S.) 206. See also Lamn v. Armstrong, 95 Minn. 434, 104 N.W. 304, 111 Am. St. Rep. 479, 5 Ann. Cas. 418; Shalla v. Shalla, 237 Iowa 752, 23 N. W. 2d 814.

In Stark v. Fulton, 136 Miss. 637, 101 So. 857, the Court held that where a valid mortgage is executed upon

property and an agreement is made between the mortgagee that the mortgagee will cancel the deed of trust of record, on the agreement of the mortgagor to apply money to be procured by another loan on the debt and to execute a second deed of trust on the property embraced in the original deed of trust, and the loan is procured in accordance with the agreement and applied by the mortgagor on the debt, and the mortgagee cancels the deed of trust, after which the mortgagor refuses to execute the second deed of trust, equity will protect the interest of the original mortgagee by decreeing a lien upon the property subordinate to the deed of trust by which the loan was procured.

In Blum v. Planters' Bank & Trust Company, 161 Miss. 226, 135 So. 353, the Court quoted with approval the rule announced in 41 C.J., p. 300, Mortgages, Sec. 47, as follows: "Under the maxim that equity regards that as done which ought to be done, a contract or agreement whereby a party promises in the future to execute and give a mortgage on specific property, if it is unambiguous and founded on a sufficient consideration, and identifies the property to be charged with due certainty, will be treated in equity as equivalent to the creation of the mortgage itself and will be enforced as a specific lien on the property described."

In the case of Box et al. v. Early, 181 Miss. 19, 178 So. 793, the Court held that, where a vendor deposited a purchase-money note as collateral security for an indebtedness owing by the vendor to the bank and the bank agreed to credit the vendor's indebtedness to the bank with the balance due on the note, with the understanding that a new note should be executed by the vendee and his wife on which the vendor would become indorser, and the vendee and his wife signed the new note, but only the vendee and not the wife signed the trust deed, the evidence warranted a finding that it was the intention of all parties that the bank should

retain a lien on the land when the original note and trust deed were surrendered for cancellation. The Court in its opinion in that case said: ''Neither does the presumption that a lien secured by a deed of trust is extinguished by the cancellation thereof on the record, nor the presumption of payment that arises from the possession by the makers of a note and deed of trust given to evidence a purchase money or other lien, prevent a court of equity from reviving and enforcing the lien, where there are no intervening equities, when necessary to do so in order that right and justice may prevail.''

There is ample evidence in the record to support the chancellor's finding that, so far as Ditsworth was concerned, he treated the appellee bank as having a lien on the land on which he was building the second house; and that, when Ditsworth advised Robertson of his debts, he informed Robertson and Robertson's attorney that there was a lien in favor of the appellee bank on the second house. There is also ample evidence in the record to support the chancellor's finding that Robertson took his deed with full knowledge of that relationship between Ditsworth and the bank, and understanding that, when the lot was conveyed to him, only an equity over and above the indebtedness to the bank would be the property of Robertson.

As to the appellee bank's cross appeal we think there was no error in the chancellor's finding that the appellant Robertson did not assume personal liability for the payment of Ditsworth's indebtedness to the appellee bank.

We find no reversible error in the record, and for the reasons stated above the decree of the lower court is affirmed on the appellant Robertson's direct appeal and also on the appellee bank's cross appeal.

Affirmed on both direct appeal and cross appeal.

*Lee, P. J.,* and *Arrington, Ethridge* and *Gillespie, JJ.,* concur.